*In The*

United States Court of Appeals

*for the*

Sixth Circuit

---

6th Circuit Case No. 23-0103

IN RE: FREDERICK GRAINGER, JR.; BRIAN BEHOVITZ; MINDY CALKINS; BRUCE CORWIN

*Petitioners*

---

*Petition for Permission to Appeal from Preliminary Approval of a Rule 23(e) Settlement Class*
*United States District Court for the Western District of Michigan*
*No. 1:14-cv-01274 (Hon. Paul L. Maloney)*

---

# DEFENDANTS-RESPONDENTS' MOTION TO DISMISS FOR LACK OF APPELLATE JURISDICTION

# INTRODUCTION

Defendants-Respondents move, pursuant to Federal Rule of Appellate Procedure 27 and Sixth Circuit Rule 27(d), to dismiss Petitioners' Rule 23(f) Petition for lack of jurisdiction. The Petition is so plainly disallowed by Rule 23(f) that the appeal is frivolous and serves only to vexatiously multiply the proceedings.

The Petition flouts the very Rule on which it is based. Federal Rule of Civil Procedure 23(f) provides that this Court lacks appellate jurisdiction over orders issued under Rule 23(e)(1), which governs preliminary approval of class-action settlements and conditional certification of classes for settlement purposes. Nonetheless, Petitioners filed this Petition under Rule 23(f), seeking to appeal a Rule 23(e)(1) order. (*See* Petition; Preliminary Approval Order, R. 234.)

Petitioners ostensibly filed this Petition to short-circuit the objection process prescribed by Rule 23(e)(5). But Rule 23(f) unambiguously forbids appeals such as this, which would "'unnecessarily delay the resolution of the litigation,'" among other problems. *In re NFL Players Concussion Inj. Litig.*, 775 F.3d 570, 588 (3d Cir. 2014) (quoting *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003)). And this Court must "give the Federal Rules of Civil Procedure their plain meaning." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 540 (1991). Accordingly, this Court should dismiss the Petition for lack of appellate jurisdiction.

# BACKGROUND

This case has a complex procedural history. Plaintiffs filed their Complaint in 2014, seeking to recover surplus proceeds following a tax-foreclosure sale. (Compl., R. 1.) Over the next several years, the matter bounced between the district court and this Court as landmark decisions altered the applicable law.[1]

During the latest appeal, this Court sent the case to mediation. (Fink Decl. ¶ 9, R. 222, PageID.3719.) Beginning in June 2021 and continuing through December 2022, the parties conducted extensive negotiations through this Court's Mediation Office.[2] (*Id.*) During the mediation, the Mediation Office suggested inviting other counties in the Western District of Michigan (the counties that had

---

[1] Between 2014 and 2020, this case was dismissed for failure to state a claim (R. 38); appealed; remanded to dismiss for lack of jurisdiction, *see Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 822 (6th Cir. 2017); dismissed for lack of jurisdiction (R. 45); and reopened but stayed pending *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019) and *Rafaeli, LLC v. Oakland Cnty*, 952 N.W.2d 434 (Mich. 2020). The *Knick* and *Rafaeli* decisions provided this case new life, prompting the Court to lift the stay. (R. 93.) Defendants then moved to dismiss the action for various reasons including sovereign immunity and qualified immunity. (R. 94) The district court granted in part Defendants' motion to dismiss but denied it as to Defendants' sovereign-immunity argument. (R. 140.) Defendants appealed (R. 160), and the district court stayed the case again pending appeal (R. 162).

[2] Petitioners' assertion that the settlement reached by the parties was "collusive" is not the subject of this motion. But it bears noting that the extensive participation of a Sixth Circuit Mediator has been treated as strong evidence that the "settlement was a product of an arm's length negotiation and is a reasonable compromise of disputed issues." *Ross v. Subcontracting Concepts, LLC*, No. CV 20-12994, 2022 WL 6736276, at *3 (E.D. Mich. Oct. 11, 2022).

been named putative defendant class members) to participate. (*Id.* ¶ 10, PageID.3720.)

And that is what occurred. (*Id.*) After extensive negotiations with the assistance of the Mediation Office, the parties reached a framework for a District-wide settlement and obtained approval of the settlement agreement by County Boards of Commissioners in November and December 2022. (*Id.* ¶¶ 9-12, PageID.3719-3720.) Over the next several weeks, counties' counsel had to communicate with various county representatives and insurance carriers before they could finalize the Settlement. (*Id.* ¶ 12, PageID.3720.) If finally approved by the district court, the Settlement will provide substantial, immediate relief to Class Members: payment of 80% of the surplus proceeds on a claims-made basis.

In March 2023, Plaintiffs filed, pursuant to Rule 23(e)(1), an unopposed motion for preliminary approval of the Settlement and conditional certification of the Settlement Class and Sub-Classes for the purposes of providing notice. On March 24, 2023, the district court issued an order under Rule 23(e), which granted preliminary approval of the Settlement and conditionally certified the Settlement Class and Sub-Classes. (Preliminary Approval Order, R. 234.) The district court scheduled a final approval hearing on the proposed Settlement for November 8, 2023. (Notice of Hr'g, R. 235.)

A few days later, Petitioners submitted the instant Petition under Rule 23(f) via email, seeking leave to appeal the March 24 Preliminary Approval Order. Upon receiving the Petition, Defendants' counsel promptly informed Petitioners' counsel that "the plain language of Rule 23(f) excludes your petition" and requested that Petitioners withdraw the appeal. (Ex. 1, Email Correspondence.) Petitioners refused to do so. Instead, Petitioners suddenly identified that they had submitted a new Petition with a supplemented Statement of Jurisdiction that cited to *Laudato v. EQT Corp.*, 23 F.4th 256 (3d Cir. 2022), for the proposition that preliminary grants of class certification are appealable. (Compare Ex. 2, Original Petition with Petition at 1.) But, as explained below, *Laudato* did not involve a Rule 23(e)(1) order. *Laudato*, 23 F.4th at 259 n.4.

Notably, this is not Petitioners' first attempt to disrupt the normal class-action objection process. In a separate case, Petitioners' counsel submitted a declaration attesting that they had contacted the Sixth Circuit mediator assigned to this case, but that the mediator "could not disclose the substance of the[] negotiations." (Ex. 3, Miller Decl., *Grainer v. Cnty. of Ottawa*, ECF No. 182-2, PageID.4432; *see also* Ex. 4, Mot. to Lift Stay, *Grainger*, ECF No. 182, PageID.4412–4413 (explaining that Petitioners' counsel contacted the mediation office and describing communications between mediator and counsel.) Petitioners' counsel also filed a motion to intervene in this action on behalf of Petitioner

Behovitz (R. 170), with the stated purpose of "flesh[ing] out" purported issues with the Settlement. (R. 171, PageID.2374.) The district court denied that motion to intervene, correctly observing:

> [I]f the settlement agreement is indeed 'woefully inadequate,' Rule 23 provides Mr. Behovitz with a remedy. Mr. Behovitz can choose to opt-into the class and settlement agreement and object to the settlement agreement, see Fed. R. Civ. P. 23(e)(5), or he can choose to opt-out of the class and settlement agreement and continue litigating his own individual claims.

(1/3/23 Order at 4 n.3., R. 186, PageID.2744.)

Petitioners' counsel was apparently unhappy with the court's advice, however, as the same counsel later moved, on behalf of Petitioner Grainger, for leave to file a response to the unopposed motion for preliminary approval of the Settlement. (R. 227.) In denying that motion, the district court reminded Petitioners' counsel that objectors to the Settlement would have their opportunity to challenge the Settlement through the ordinary Rule 23(e)(5) procedure. (*See* 3/27/2023 Order at 1, R. 236, PageID.4150.)

## ARGUMENT

Under Federal Rule of Appellate Procedure 27 and Sixth Circuit Rule 27(d), a party may file a motion to dismiss for lack of jurisdiction. Fed. R. App. P. 27; 6

Cir. R. 27(d). Here, the Petition is disallowed by the very rule that Petitioners cite as the basis of this Court's appellate jurisdiction.

This Court's jurisdiction is generally limited to appeals from final orders of the district courts and certain categories of interlocutory orders. *See* 28 U.S.C. §§ 1291, 1292. Drawing upon its authority under 28 U.S.C. § 1292(e), the Supreme Court has authorized interlocutory appeals from orders granting or denying class-action certification. *See* Fed. R. Civ. P. 23(f).

Rule 23(f) provides: "A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, *but not from an order under Rule 23(e)(1)*." Fed. R. Civ. P. 23(f) (emphasis added). Rule 23(e)(1) is the rule governing preliminary approval of class action settlements and conditional certification of classes for settlement purposes. It requires the court to assess whether it will "likely" be able to "(i) approve the [settlement] proposal [at the final-approval stage] under Rule 23(e)(2);  and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The latter inquiry is usually referred to as the process of conditional certification of a class or preliminary approval of a proposed class certification. 4 Newberg and Rubenstein on Class Actions § 13:11 (6th ed.); *see also, e.g., In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 670 (6th Cir. 2020) (distinguishing "actual certification" from "'conditional' certification of a settlement class for case management purposes

(such as to provide notice to absent class members)," a process in which a court finds that a proposed class "preliminarily satisfie[s] the requirements of Rule 23(a) and (b)" (cleaned up)).

Here, Petitioners seek to appeal an order that expressly states that it was issued "pursuant to Federal Rule of Civil Procedure 23(e)." (Preliminary Approval Order at 1, R. 234, PageID.4131.) It also reiterates that it does not encompass a final ruling regarding class certification:

- "The Settlement Class and Settlement Sub-Classes *appear likely to satisfy* the prerequisites of Rule 23(a) and Rule 23(b)(3). Accordingly, the Settlement Agreement and the settlement are sufficient to warrant notice thereof and a full hearing on the settlement." (*Id.* at 2, PageID.4132 (emphasis added).)

- "If, for any reason, the Settlement Agreement *is not finally approved* or does not become effective, *this Order, including but not limited to the conditional Settlement Class and Settlement Sub-Classes certification, shall be null and void and automatically deemed vacated*. . . . In such event, the parties and the putative Class Members shall be returned to the same litigation position that they were in prior to seeking preliminary approval of the Settlement Agreement, and they shall be free to raise all claims, defenses, and arguments as they would have been able to had they never negotiated or sought approval of the Settlement, *including opposing class certification on any and all grounds* . . ." (*Id.* at 2–3, PageID.4132–33 (emphasis added))

- "Solely for the purposes of settlement . . . , this Court hereby conditionally certifies the following class . . ." (*Id.* at 3, PageID.4133.)

- "Solely for the purposes of settlement . . . , this Court hereby conditionally certifies Settlement Sub-Classes . . ." (*Id.*)

- "A Final Approval Hearing shall be held [in the future]." (*Id.* at 17, PageID.4147.)

Appellate jurisdiction is absent under the plain terms of Rule 23(f). Fed. R. Civ. P. 23(f). The advisory committee note to the 2018 amendments explains:

> As amended, Rule 23(e)(1) provides that the court must direct notice to the class regarding a proposed class-action settlement only after determining that the *prospect of eventual class certification justifies giving notice. But this decision does not grant or deny class certification, and review under Rule 23(f) would be premature.* This amendment makes it clear that an appeal under this rule is not permitted until the district court decides whether to certify the class. [Fed. R. Civ. P. 23(f) advisory committee note to 2018 amendments.]

*See also* 2 McLaughlin on Class Actions § 7:1 (19th ed.) ("A decision preliminarily certifying a class for settlement purposes [] is not appealable under Rule 23(f)."); Manual Complex Lit. § 15.12 (4th ed.) (explaining that Rule 23(f) "does not authorize appeals from decisions under Rule 23(e)(1) giving notice of a proposed settlement of a class action (and preliminary approval of class certification)").

The rationale for excluding Rule 23(e)(1) orders from interlocutory appellate review is provided by pre-amendment rulings that also declined to allow Rule 23(f) appeals from preliminary approval orders. First, a preliminary approval order, due to its tentative nature, does not contain "any error that [an appellate court] could

correct." *NFL Players Concussion Inj. Litig.*, 775 F.3d at 586. Before the final

fairness hearing, there is no firm "ruling [] to analyze," because the district court

has not made a final assessment regarding the propriety of the settlement and

settlement class. *Id.* at 587–88. Rather, in the lead up to the fairness hearing, the

district court engages in a "careful and thoughtful . . . review[]," with which

appellate courts should not prematurely "meddle." *Id.* at 588; *cf. In re Delta Air

Lines,* 310 F.3d 953, 960 (6th Cir. 2002) (explaining that "an indication that the

district court will reexamine [a] certification decision [later] should discourage an

interlocutory appeal").

Moreover, the entire purpose of a preliminary approval order is to "provide

putative class members with notice" so that they can "participate in the fairness

hearing" to help identify and prevent potential errors. *NFL Players Concussion Inj.

Litig.*, 775 F.3d at 586. Premature review "greatly undermines the policy against

piecemeal litigation." *Id.* (cleaned up). Finally, not only would immediate appellate

review "unnecessarily delay the resolution of the litigation," it could—in many

cases—"further jeopardize the limited assets available for resolving the claims."

*Id.* at 588 (quoting *Liles*, 350 F.3d at 746).

The concerns that animated the amendment of Rule 23(f) apply with full

force here, supporting dismissal of the Petition. Currently, the district court's

findings remain subject to change, as the court's order repeatedly explains.

Potential objectors (including Petitioners) will have ample opportunity to identify purported issues with the Settlement in the district court, *see* Fed. R. Civ. P. 23(e)(5), and then, if necessary, in a later, jurisdictionally sound appeal. Assuming appellate jurisdiction now would needlessly interrupt the district court's review of the Settlement.

Furthermore, to the extent Petitioners are unhappy with the Settlement, they remain free to opt out, which bolsters the conclusion that considering their objections now would be premature and a potential waste of judicial resources. *See, e.g., Senegal on behalf of a class v. JPMorgan Chase Bank, N.A.*, 939 F.3d 878, 882 (7th Cir. 2019) (explaining that opt-outs could not appeal because they were not aggrieved by approval of settlement).

Petitioners do not grapple with the plain language of Rule 23(f) (which they tellingly omit from their Petition) or the rationale underlying its amendment. Instead, they rely entirely on a footnote in a Third Circuit decision. *Laudato*, 23 F.4th at 259 n.4. *Laudato* involved an irregular process whereby the district court "agreed with [plaintiff] that 'it would seem in everyone's best interests to resolve this case on a class basis,' and declared that 'class certification will be granted, with instructions,'" but rejected the plaintiff's proposed class definition and directed the parties to meet and confer regarding a class definition—at which time defendants appealed under Rule 23(f). *Id.* at 258. On appeal, the plaintiff argued

that there was no jurisdiction under Rule 23(f) because the district court's order

was "preliminary." *Id.* at 259. The Third Circuit rejected that argument, finding

that the district court's order, though "preliminary" in a sense, "clearly stated a

grant of class certification." *Id.* In so doing, the Third Circuit directly distinguished

the type of "preliminary" approval involved there and the "preliminary" approval

encompassed in a Rule 23(e)(1) order addressing a settlement, as in this case. The

Third Circuit noted:

> [Plaintiff] also argues that *In re NFL Players Concussion Injury
> Litigation* makes plain that "preliminary" certification orders
> are not subject to appeal under Rule 23(f). That case, however,
> dealt with the appealability of what would now be a Rule 23(e)
> settlement order, not a Rule 23(c) certification order. *See* 775
> F.3d at 584. This Court's refusal to assume jurisdiction over
> settlement proposals that postpone class certification is
> inapposite. And if our precedents did not make that distinction
> clear, the Rules Committee's subsequent decision to
> amend Rule 23 to that end accomplished that objective. Neither
> our precedents nor the 2018 amendments to Rule 23 stand for
> the proposition that so-called "preliminary" grants of class-
> action certification are unappealable. [*Id.* at 259 n.4.]

Thus, *Laudato* does not authorize a Rule 23(f) appeal from a Rule 23(e)(1)

preliminary approval order. *Laudato* involved a *sui generis* procedural posture that

is not instructive here, where the district court entered a quintessential Rule

23(e)(1) order.

## CONCLUSION

Under the plain language of Rule 23(f), parties cannot petition this Court for permission to appeal a preliminary approval order. Petitioners have done so without even a fig leaf of authority. For the reasons stated above, this Court should dismiss the Petition for lack of appellate jurisdiction.

[signature page to follow]

Respectfully submitted,

/s/ Theodore W. Seitz
Theodore W. Seitz (P60320)
Kyle M. Asher (P80359)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, Michigan 48933
517-374-9137
kasher@dykema.com
tseitz@dykema.com

*Attorneys for County of Van Buren*

/s/  Charles A. Lawler
Charles A. Lawler (P65164)
CLARK HILL
212 E. Grand River Avenue
Lansing, Michigan 48906-4328
517-318-3016
clawler@clarkhill.com

*Attorney for Counties of Baraga and Ontonagon*

/s/ Ashley G. Chrysler
Matthew T. Nelson (P64768)
Ashley G. Chrysler (P80263)
WARNER NORCROSS + JUDD LLP
1500 Warner Building
150 Ottawa Avenue NW
Grand Rapids, MI 49503
616-752-2000
mnelson@wnj.com

*Attorneys for Counties of Kent and Ottawa*

/s/ Allan C. Vander Laan
Allan C. Vander Laan (P33893)
Douglas C. Curlew (P39275)
Cummings McClorey, Davis & Acho P.L.C.
2851 Charlevoix Dr. SE, Suite 327
Grand Rapids, MI 49546
616-975-7470
avanderlaan@cmda-law.com
dcurlew@cmda-law.com

*Attorney for Counties of Ionia, Allegan, Barry, Montcalm, Muskegon, Benzie, Manistee, Wexford, Missaukee, Mason, Lake, Osceola, Oceana, Newaygo, Berrien, Cass, Kalamazoo, St. Joseph, Hillsdale, Leelanau, Grand Traverse, Antrim, Emmet, Kalkaska, Gogebic, Houghton, Iron, Marquette, Dickinson, Menominee, Alger, Delta, Schoolcraft, Mackinac, Chippewa, Ingham, Eaton, and Calhoun*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys on that system.

By: */s/ Ashley G. Chrysler*
Ashley G. Chrysler
WARNER NORCROSS + JUDD LLP
1500 Warner Building
150 Ottawa Avenue NW
Grand Rapids, MI 49503
616-752-2000
achrysler@wnj.com

# Exhibit 1

| | |
|---|---|
| **From:** | Nelson, Matthew |
| **Sent:** | Wednesday, March 29, 2023 11:33 PM |
| **To:** | Philip Ellison |
| **Cc:** | David Fink; Charles Lawler; Seitz, Theodore; avanderlaan@cmda-law.com; nfink@finkbressack.com; oramey@lewisreedallen.com; Philip D.W. Miller; rryan@lewisreedallen.com; jshekesq@btc-bci.com; Bogren, Charles; Asher, Kyle; sfazio@kreisenderle.com; mshenouda@clarkhill.com; Chrysler, Ashley; Smith, Timothy; Christopher D. Kaye; E. Powell Miller; Gregory A. Mitchell; Matt Gronda; Sharon S. Almonrode; William Kalas; Karie Boylan; donv@visserlegal.com; donovan@visserlegal.com; David Shea |
| **Subject:** | Re: [EXTERNAL] Concurrence Sought // In re Grainger (Wayside Church v Van Buren Cnty) |

Phil,

The plain language of Rule 23(f) excludes your petition. So not only do we not concur in your motion for stay, but we respectfully request that you withdraw your appeal. Indeed, given the plain language of the rule, your appeal is frivolous, and so we will need to recoup any costs and fees spent in addressing it.

Best regards,

Matthew T. Nelson
Warner Norcross & Judd LLP
(616) 752-2539


On Mar 29, 2023, at 4:30 PM, Philip Ellison <pellison@olcplc.com> wrote:


Counselors:

A short while ago, my office filed a Rule 23(f) petition with the US Court of Appeals for the Sixth Circuit on behalf of four involuntary class members who are seeking immediate review of your pre-drafted preliminary approval order entered by the District Court. Shortly, we will be filing a motion to stay the preliminary order pending appeal. FRCP 8 requires to seek the stay in the district court before seeking such relief from the appeals court. I will be filing that motion shortly. I would ask for your concurrence in the relief given the critical legal issues raised in the Rule 23(f) petition. Please advise if you will concur.

Thank you.

//Philip L. Ellison, MBA, JD, Esq
Attorney at Law & Business Counselor
---------------------------------

OUTSIDE LEGAL COUNSEL PLC
        www.olcplc.com
-----------------------------------
pellison@olcplc.com
Office: (989) 642-0055
Fax #: (888) 398-7003

# Exhibit 2

No. _____

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

*In re* FREDERICK GRAINGER JR, BRIAN BEHOVITZ,
MINDY CALKINS, and BRUCE CORWIN

_____

On Petition from the United States District Court
for the Western District of Michigan – Southern Division
Honorable Paul Maloney, District Judge

_____

# PETITION UNDER FRCP 23(f) AND FRAP 5
# SEEKING LEAVE TO APPEAL AGAINST ORDER
# GRANTING CLASS CERTIFICATION AND
# PRELIMINARY APPROVAL

_____

PHILIP L. ELLISON (P74117)
Outside Legal Counsel PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

*Attorney for Petitioners*

***Additional counsel listed in
signature block*

**CORPORATE DISCLOSURE STATEMENT**

Petitioners Frederick Grainger Jr, Brian Behovitz, Mindy Calkins, and Bruce Corwin are not corporate entities and, as such, have no parent corporation and are not a publicly-held corporation owning 10% or more of stock of a party. FRAP 26.1(a).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. ii

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW............2

INTRODUCTION.................................................................................3

STATEMENT OF THE CASE ...............................................................5

    I.    *Wayside* was used to create a collusive reverse auction settlement. ................................................................. 10

    II.   The terms of the proposed settlement are poor. ........................ 13

SUMMARY OF ARGUMENT .................................................................15

ARGUMENT ......................................................................................16

    I.    The District Court failed to conduct a rigorous analysis into whether the Wayside counsel was adequate.............................. 16

        A.    Rule 23 forbids the *Wayside* parties' conduct ................... 18

    II.   The District Court failed to hold any hearing, allow opposition, or even undertake any review, let alone a rigorous one..................................................................23

CONCLUSION ...................................................................................27

RELIEF REQUESTED .........................................................................27

CERTIFICATE OF COMPLIANCE.........................................................29

CERTIFICATE OF SERVICE.................................................................30

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................... 15, 16

*Fox v. Saginaw Cnty.*,
2022 U.S. App. LEXIS 4950 (6th Cir. 2022) ................................. 10

*Freed v. Thomas*,
2021 WL 942077 (E.D. Mich. Feb. 26, 2021) ............................... 14

*Hall v. Meisner*,
51 F.4th 185 (6th Cir. 2022).......................................................... 14

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
733 F. Supp. 2d 997 (E.D. Wis. 2010) .......................................... 20

*In re Shell Oil Refinery*,
155 F.R.D. 552 (E.D. La. 1993) ..................................................... 26

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615, 631 (6th Cir. 2007) ............................................ 1, 26

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
523 F.3d 1091 (9th Cir. 2008) ...................................................... 19

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ........................................................ 24

*Pung v. Cnty. of Isabella*,
2022 WL 4586122 (E.D. Mich. Sept. 29, 2022) ............................ 14

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002) ........................................................ 19

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002) ........................................................ 24

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
    874 F.3d 692 (11th Cir. 2017) ....................................... 20

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
    262 F.3d 559 (6th Cir. 2001) ........................................ 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................... 2, 15, 16

<u>SECONDARY SOURCES</u>

Am. Bar Ass'n, Ethical Guidelines for Settlement
    Negotiations (2002) ....................................................... 21

Bolch Judicial Institute, Duke Law School, GUIDELINES AND
    BEST PRACTICES IMPLEMENTING 2018 AMENDMENT TO
    RULE 23 CLASS ACTION SETTLEMENT PROVISIONS.................... 24, 25

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements
    and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010).......... 22

Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS
    (University of Chicago Press, 2019)................................. 22

John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass
    Tort Class Action*, 95 COLUM. L. REV. 1343, 1354 (1995).............. 20

Kent M. Williams, *A Touch of Class: Reducing the Risk of
    "Sweetheart Deals"*, 62 BENCH & BAR OF MINN. 20 (2005) ............. 20

Marcel Kahan & Linda Silberman, *The Inadequate Search for
    "Adequacy" in Class Actions: A Critique of Epstein v. MCA, Inc.*,
    73 N.Y.U. L. REV. 765 (1998) ........................................ 20

Rhonda Wasserman, *Dueling Class Actions*,
    80 B.U. L. REV. 461, 473 (2000) ..................................... 20

Samuel Issacharoff, *Governance and Legitimacy in the Law
    of Class Actions*, 1999 SUP. CT. REV. 337 (1999) ............................. 20

## Court Rules

FRCP 23..................................................................................*in passim*

FRAP 5.......................................................................................... 1

# STATEMENT OF JURISDICTION

On March 24, 2023, Judge Paul L. Maloney of the United States District Court for the Western District of Michigan entered the Wayside Plaintiffs requested "*Order Granting Motion for Preliminary Approval of Proposed Class Action Settlement*" without an issued opinion or a hearing on the same. *Wayside*, 1:14-cv-01274, RE 234, PageID # 4131-4148.

By authority of FRCP 23(f), this Court "may permit an appeal from an order granting or denying class-certification," if a "petition for permission to appeal" is filed within 14 days after entry of the certification order. The present petition is filed within that time limit in accordance with FRAP 5. Therefore, this Court has jurisdiction to review the petition.

## STATEMENT OF THE ISSUE(S)
## PRESENTED FOR REVIEW

I.    Whether the District Court abused its discretion when certifying class counsel as adequate when they presented from approval a prohibited collusive settlement deriving from an illegal reverse auction.

**Petitioners answer:    Yes.**

II.    Whether the District Court abused its discretion certifying a settlement class when not undertaking *any* Rule 23(a) analysis contrary to its duty to under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) to perform a "rigorous analysis."

**Petitioners answer:    Yes.**

# INTRODUCTION

Class action "collusion" is abhorred. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). Here, the fact of collusion is clear. **Exhibit A.**[1] There are four competing class actions, and over forty western Michigan counties chose to settle with one set of plaintiffs who are legally compromised. The only reason these counties would now agree to be sued in *Wayside* is because they believe they can get the cheapest possible deal from *Wayside*'s compromised counsel. And, in fact, they have. *Wayside*, 1:14-cv-01274, RE 234, PageID # 4131-4148. This is facially improper as it is counter to our adversarial system of justice and clear *prima facie* evidence of an illegal collusive settlement. Additionally, counsel for *Wayside* self-appointed itself as lead counsel after the District Court left pending competing motions for lead counsel for years. The process the District Court utilized in *Wayside* has circumvented Rule 23 and controlling caselaw by permitting the engagement of self-help in violation of Rule 23(g)'s leadership approval process, which required the

---

[1] Professor Fitzpatrick's Declaration is in the record at *Wayside*, 1:14-cv-01274, RE 228-2, PageID # 3885-3922 and it is attached hereto for convenience.

District Court to choose the best attorneys as lead counsel to negotiate a settlement and otherwise represent the class. Instead, the District Court rubber-stamped a preliminary settlement without even a hearing. Leave is sought to ultimately vacate the preliminary approval order as incorrectly granted. District courts must *rigorously* analyze class certification requests and then choose who represents the putative class *best. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011); *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 418 fn.8 (6th Cir. 2012)(the "Sixth Circuit uses the 'rigorous analysis' requirement"). Here, the District Court failed to conduct *any* analysis at all and failed to heed that a collusive settlement from a reverse auction that makes *Wayside*'s counsel both compromised (and totally inadequate under Rule 23(a)(4)).

Because the settlement is the product of collusion and wrongful conduct and preliminarily approved in direct contravention of Rule 23 and controlling case law, Petitioners (who are now involuntary class members) Frederick Grainger Jr, Brian Behovitz, Mindy Calkins, and Bruce Corwin respectfully request that the Court grant this Rule 23(f) petition to review the adequacy of class counsel as required by Rule 23(a)(4) and ultimately vacate the preliminary settlement approval and

class certification order that appointed counsel for *Wayside* as class counsel. There is widespread opposition to preliminary approval of the collusive settlement from class members that the District Court simply refuses to consider. Moreover, counsel for Grainger filed a motion for permission to respond to the pending preliminary approval motion together with a proposed comprehensive brief supported by a declaration of Professor Brian Fitzpatrick (**Exhibit A**), an expert on class action reverse auctions. *Wayside*, 1:14-cv-01274, RE 227, PageID # 3748-3750; RE 228-2, PageID # 3777-4040. Instead of addressing the same, the District Court simply *sua sponte* entered the proposed preliminary approval order stating "it did not require commentary from Mr. Grainger to resolve the motion." *Wayside*, 1:14-cv-01274, 236, PageID # 4150.

## STATEMENT OF THE CASE

Counties within the Western District of Michigan committed an unconstitutional taking. The Western District counties took property from foreclosed taxpayers beyond the taxes due. *Wayside Church. v. Van Buren County*, No. 1:14-cv-01274 ("*Wayside*"), *Grainger v. Ottawa County*, No. 1:19-cv-501 ("*Grainger*"), *Calkins v. Kent County*, No. 1:21-cv-00062 ("*Calkins*"), and *Corwin v. Van Buren County*, No. 1:21-cv-

00082 ("*Corwin*") are overlapping class actions. Counsel in *Wayside*, on the one hand, and in *Grainger*, *Calkins*, and *Corwin* on the other, have long contested which team of attorneys – *Wayside*'s or *Grainger*'s – should represent an eventual class.

The *Wayside* case has suffered a rocky and unbodied procedural history. In December 2014, three plaintiffs filed *Wayside*. It named only Van Buren County and its treasurer as Defendants. *Wayside*, 1:14-cv-01274, RE 1, PageID # 2-3. But it pled a combination plaintiff class and defendant class comprised of all Michigan counties that had administered the tax foreclosure process. *Id.* at PageID # 23-24. The District Court dismissed *Wayside* because "Michigan law does not provide a delinquent taxpayer a property interest in the surplus equity." *Wayside*, 1:14-cv-01274, RE 38, PageID # 417.

The *Wayside* Plaintiffs appealed. This Court vacated the District Court's decision and remanded with explicit instructions to dismiss for lack of jurisdiction. *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812 (6th Cir. 2017). The Sixth Circuit mandate issued and review by the United States Supreme Court was denied.

At first, the District Court complied. *Wayside*, 1:14-cv-01274, RE 45-46. But on March 28, 2018, the *Wayside* plaintiffs – through newly hired attorneys (Pacific Legal Foundation) who have since had nothing to do with the proposed settlement and withdrew as counsel -- moved to reopen the case. *Wayside*, 1:14-cv-01274, RE 49, 49-1. Roughly a year later, on March 26, 2019, the District Court granted Plaintiffs' Motion to Reopen due to "an intervening development in the law." *Wayside*, 1:14-cv-01274, RE 64, PageID # 646.

In 2019, the *de facto* leadership dispute emerged when Frederick Grainger Jr. filed *Grainger. Grainger*, 1:19-cv-501, RE 1. The *Grainger* Plaintiff moved for appointment of his counsel as interim co-lead counsel. *Grainger*, 1:19-cv-501, RE 23. Two weeks later, the *Wayside* plaintiffs moved to consolidate *Wayside* and *Grainger* and appoint *Wayside*'s counsel as interim lead counsel for the consolidated cases. *Wayside*, 1:14-cv-01274, RE 71-72. On October 20, 2020, the District Court denied the *Wayside* plaintiffs' motion to consolidate and appoint their attorneys as lead counsel. *Wayside*, 1:14-cv-01274, RE 102.

In the meantime, the County Defendants moved at various times to dismiss both *Wayside* and *Grainger*. One such motion challenged

*Wayside*'s reliance on the defendant class. *Wayside*, 1:14-cv-01274, RE 95, PageID # 1162-1164. While it was pending, the *Wayside* plaintiffs moved for leave to file a Second Amended Complaint that named specific counties as named defendants, instead of relying on the defendant class. *Wayside*, 1:14-cv-01274, RE 108.

On December 17, 2020, while the *Wayside* motion to dismiss and the motion for leave to amend were pending, the *Grainger* Plaintiff moved to certify the Class and appoint co-lead counsel. *Grainger*, 1:19-cv-501, RE 101. A week later, the *Wayside* Plaintiffs moved to certify the class in their case and appoint their counsel as lead counsel. *Wayside*, 1:14-cv-01274, RE 114-118.

On February 16, 2021, the District Court granted the *Wayside* Defendants' Motion to Dismiss in part, finding that dismissal was warranted with respect to all claims against counties who are outside of the Western District of Michigan (plus Charlevoix County), but denying the *Wayside* Defendants' sovereign immunity argument. *Wayside*, 1:14-cv-01274, RE 140, PageID # 1960-1962. More importantly (for purposes of this appeal), the District Court also denied the *Wayside* Plaintiffs' motion for leave to amend the complaint to add the other counties as

named defendants. *Wayside*, 1:14-cv-01274, RE 140, PageID # 1959-1960. Defendant Van Buren County appealed the District Court's rejection of its Eleventh Amendment argument as of right. *Wayside*, 1:14-cv-01274, RE 160, PageID # 2174. Conversely, the *Wayside* Plaintiffs did not seek leave to appeal the District Court's denial of its motion to amend.

Then, in *Grainger*, the District Court narrowed the complaint but allowed it to proceed, and denied class certification "but not for any of the Rule 23 requirements." *Grainger*, 1:19-cv-501, RE 127, PageID # 3108. Rather, the Court reasoned that Mr. Grainger suffered a unique infirmity as a potential class representative, based on timing defenses. Three days later, Petitioner Brian Behovitz moved to intervene in *Grainger* to assume the class representative role. *Grainger*, RE 133, 1:19-cv-501. In effect, he sought to substitute himself for Mr. Grainger and certify the class exactly as *Grainger* had sought. *Grainger*, 1:19-cv-501, RE 133.

Thereafter, several putative class members emerged to support the *Grainger* team. On March 29, 2021, the plaintiffs in a third tax equity lawsuit, *Calkins*, moved to consolidate their case with *Grainger*, RE 158-159, in the process endorsing *Grainger* over *Wayside*, (*Grainger*, 1:19-cv-501, RE 159, PageID # 3879), and supporting the appointment of

*Grainger*'s counsel as lead counsel. *Grainger*, 1:19-cv-501, RE 158, PageID # 3870). *Calkins*' pro-*Grainger* counsel has also filed the *Corwin* case. On April 1, 2021, Eric Lamb moved to intervene in *Grainger* as well, RE 167, and, in doing so, expressed support for *Grainger*'s proposed lead counsel. *Grainger*, 1:19-cv-501, RE 167, PageID # 4108-4109.

On April 9, 2021, the District Court entered orders staying all four cases pending the outcome of Van Buren County's sovereign immunity appeal in *Wayside*. *Wayside*, 1:14-cv-01274, RE 162; *Grainger*, 1:19-cv-501, RE 177.

## I. *Wayside* was used to create a collusive reverse auction settlement.

Van Buren County's appeal is and has remained technically outstanding. But it has been substantively mooted by its counterpart appeal in the Eastern District *Fox v. Saginaw* case. This Court fully rejected the counties' sovereign immunity argument and found the Eleventh Amendment does not bar these cases, including by extension the *Wayside* appeal. *Fox v. Saginaw Cnty.*, 2022 U.S. App. LEXIS 4950 (6th Cir. 2022).

In the nearly two years since Van Buren County initiated its appeal in *Wayside*, there has been no briefing and nearly two dozen extensions

taken by the Sixth Circuit mediation office. **Exhibit B**. Instead, briefing has been serially postponed to accommodate the nonpublic mediation process that resulted in the presented and now preliminarily approved settlement. Whatever the appeal's initial rationale, it eventually became, effectively, a pretense to retain the privacy of the mediation process in a place outside the District Court's oversight and to the exclusion of the other competing cases pending in the federal district. *Wayside*, 1:14-cv-01274, RE 179, PageID # 2606, 2613.

As the *Grainger* Plaintiffs have argued, when the attorneys for Defendants and Wayside negotiated a settlement despite the ongoing leadership dispute, their efforts constituted a collusive reverse auction. *Wayside* had no leverage as an actual class-wide vehicle. Because the District Court had denied the motion to amend its complaint to add the non-Van Buren defendants, the only thing the Wayside attorneys could offer Defendants was the opportunity for a minimal settlement that the District Court might approve. The *Wayside* plaintiffs had no standing or vehicle to litigate against them and, therefore, negotiated a settlement despite having no leverage to meaningfully bargain with Defendants Notwithstanding this pitfall, *Wayside*'s counsel had an incentive to

engage in this process: the prospect of being the unappointed team of attorneys to control both the negotiations and the settlement outcome for the putative class across the Western District of Michigan. Both Defendants and Wayside's counsel would win – but at the class's expense. *Wayside*, 1:14-cv-01274, RE 171, PageID # 2366-2367.

Over the past few months, the *Wayside* attorneys slowly revealed their scheme. The *Wayside* parties moved for an indicative ruling, (*Wayside*, 1:14-cv-01274, RE 164, PageID # 2189), and sought leave to amend, *tellingly unopposed by the Defendants*, announcing that a settlement was close at hand. *Wayside*, 1:14-cv-01274, RE 175, PageID # 2543-2546. The District Court granted the motion. *Wayside*, 1:14-cv-01274, RE 184. Thereafter, the sum of all fears materialized with the unopposed motion for preliminary approval of a class settlement *without a hearing* by *Wayside*'s counsel. The District Court granted preliminary approval of the collusive settlement secretly reached between Wayside and nearly every county in the Western District of Michigan (all but one of whom had just been added by the Court to effectuate the district-wide settlement). *Wayside*, 1:14-cv-01274, RE 164, PageID # 218.

*Wayside*'s presented settlement simply abandons the possibility of

a meaningful and robust recovery in favor of a collusive settlement where class members are forced to receive a tiny fraction of the aggregate value of the undisputed and unconstitutional taking of their surplus proceeds. **Exhibit A, ¶¶15-19.**

## II. The terms of the proposed settlement are poor.

The settlement is terrible for the class members as it leaves them with only a narrow opportunity to claim a very small fraction of the amount that defendants illegally took, while affording erased lienholders (see M.C.L. § 211.78k(5)(c)) the windfall opportunity to seek their own recovery in lawsuits against class members who dare to submit claims. Additionally, the settlement is a claims-made settlement and any funds that "go[] undistributed (e.g., unclaimed amounts and uncashed checks) will revert to the [respective] County." *Wayside*, 1:14-cv-01274, RE 220-2, PageID # 3628 (Settlement Agreement, § 8.4). The "Class Period" is limited "to the time for each County during which that County acted as a foreclosing governmental unit, beginning no earlier than January 1, 2013, and ending on December 31, 2020, inclusive." *Id.* at PageID # 3606 (§ 1.11.). This is narrower than the claims period based on the as-pled

class, which would have gone back at least three years from the December 11, 2014, complaint and probably much further.

Worse, class members only recover a fraction of the surplus proceeds taken, despite the fact Defendants do not contest their unconstitutional taking. At the outset, class members would be paid only 80 percent of the surplus proceeds taken.[2] *Id.* at PageID # 3627 (§ 8); # 3608 (§ 1.32). Because the required payment depends entirely on whether a claim is actually made, the defendants only ever need to expend eighty percent of those claims against them.

A twenty percent attorney fee is then proposed to be deducted from each recovery, *Wayside*, 1:14-cv-01274, RE 220-2, PageID # 3628 (§ 9.1), despite the fact class members are entitled to payment of such fees by the counties, e.g. *Freed v. Thomas*, 2021 WL 942077, at *8 (E.D. Mich. Feb. 26, 2021). As a result, the claiming class members would receive 64 percent of the surplus proceeds taken.

---

[2] This is not even the extent of their damages; the Class has a solid argument for fair-market-value based damages under *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), which the proposed settlement simply abandons.

Moreover, class members recover none of the prejudgment interest to which they are entitled. *Id.*; *see also Pung v. Cnty. of Isabella*, 2022 WL 4586122 (E.D. Mich. Sept. 29, 2022). Here, interest has been accruing and compounding in some cases for over many years; calculating and analyzing it on a class-wide basis, it will almost certainly exceed twenty percent or more. Thus, on a class-wide basis, this means the recovery will be mere pennies on the dollar on claims for unconstitutional takings of surplus proceeds where the Defendants neither contest liability nor damages. **Exhibit A, ¶¶15-19.**

## SUMMARY OF ARGUMENT

Plaintiffs must demonstrate that the proposed class and proposed class representatives meet a four requirements threshold, including the "adequacy of representation." FRCP 23(a)(1)-(4). Courts must give "undiluted, even heightened, attention in the settlement context" to the certification requirements of Rule 23, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997), with a review that is "rigorous." *Dukes*, 564 U.S. at 350-351.

The presented settlement undertaken by counsel for *Wayside* and the Counties is "collusive" and, therefore, unlawful. **Exhibit A**. By

undertaking the first ever "reverse auction" in Michigan, this case is prime for a Rule 23(f) review of the adequacy requirement – especially when the District Court failed to undertake the required rigorous analysis before certifying the class and appointing class counsel as part of the preliminary approval process.

If the District Court had undertaken the required review (and after this Court does, should this petition be granted), *Wayside*'s counsel and its class representatives that negotiated this collusive settlement as part of a reverse action must be deemed inadequate under Rule 23(a)(4). The Court should grant the Petition.

## ARGUMENT

## I. The District Court failed to conduct a rigorous analysis into whether the Wayside counsel was adequate.

The first step for a federal trial court faced with a motion for preliminary approval is to certify the proposed settlement class for settlement purposes as meeting the requirements of Rule 23. *See Amchem*, 521 U.S. at 619-620; MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004). The four requirements are (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FRCP 23(a)(1)-(4). Courts must give "undiluted, even heightened, attention in

the settlement context" to the certification requirements of Rule 23. *Amchem*, 521 U.S. at 620. The review must be "rigorous." *Dukes*, 564 U.S. at 350-351.

However, due to the collusive settlement by way of a reverse auction process, *Wayside* fails the fourth criterion: adequacy of representation. Under Rule 23, "a court that certifies a class must appoint class counsel... [who] must fairly and adequately represent the interests of the class." FRCP 23(g)(1)(B). Plaintiffs' counsel in *Wayside* has done anything but. Its presented settlement puts its own interests – being the counsel team to receive fees – over the class members' interest in receiving a robust and just recovery.

The *Wayside* plaintiffs are undoubtedly in a compromised bargaining position, which explains the reached destructive "reverse auction" settlement. *Wayside* was an especially appealing reverse auction target for the Western District counties (excepting Van Buren County). They were collectively blessed with the opportunity of having the inherent incentive to choose a settlement partner who, by order of the District Court, lacked the rudimentary leverage of having the ability to sue them (unless they voluntarily chose to be sued by Wayside). And if

they are *volunteering to be sued by Wayside*, then that is a *prima facie* indication the settlement is inadequate and inherently collusive.

## A.    Rule 23 forbids the *Wayside* parties' conduct

The settlement procured by *Wayside* is the product of unethical and unlawful collusion. Without the authority of a Rule 23(g) appointment, the three *Wayside* plaintiffs and their counsel surreptitiously engaged in negotiations with dozens of non-parties, who were sued in other pending cases, without proper Rule 23(g) approval. Counsel for *Wayside*, seizing on the secrecy of the mediation process and to the exclusion of their competitors, went far beyond the legitimate settlement of an individual claim between Wayside and Van Buren County. They had no authority to negotiate a class action resolution with Van Buren County, let alone with the entire Western District counties.

The Federal Rules of Civil Procedure, and Rule 23 in particular, anticipate an adversarial process in which class counsel serves the class's interests. Here, the *Wayside* plaintiffs – and, by extension, their attorneys – serve at the pleasure of defendants who chose the *Wayside* team to sue them. Attorneys and class representatives who serve at the sufferance of their opponents cannot adequately represent a class. They

are mere tools for the defense selling out the class to enrich themselves, as counsel for *Wayside* has no ability to litigate the case on a class-wide basis without extinguishing or escaping the strict and rigorous process of determining class counsel under Rules 23(e) and (g) and retaining the ability to sue the 42 out of 43 counties (other than Van Buren County), which they lost when the District Court denied their motion to add those Defendants as untimely. Said another way, the Western District counties have 100% veto power over any settlement with *Wayside*, rendering the putative settlement inherently collusive as *Wayside* could not, by prior order of the District Court, sue 42 of the 43 counties without their permission.

The present situation in Wayside reflects a "reverse auction," which is an "abuse" against which courts should be "wary." MANUAL FOR COMPLEX LITIGATION § 21.61 (4th ed. 2004). "A reverse auction is said to occur when 'the defendant in a series of class actions picks the most *ineffectual* class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.'" *Negrete v. Allianz Life Ins. Co. of N. Am.*,

523 F.3d 1091, 1099 (9th Cir. 2008) (citing *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002)) (emphasis added).

Under these circumstances, "[e]ven in the absence of bad faith, suspect settlements result in large measure because of the defendants' ability to shop for favorable settlement terms[.]" John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 COLUM. L. REV. 1343, 1354 (1995). "Defendants, well aware of these incentives, can thus go plaintiff and lawyer shopping[.]" Marcel Kahan & Linda Silberman, *The Inadequate Search for "Adequacy" in Class Actions: A Critique of Epstein v. MCA, Inc.*, 73 N.Y.U. L. REV. 765, 775 (1998). *See also* Rhonda Wasserman, *Dueling Class Actions*, 80 B.U. L. REV. 461, 473–74 (2000) (discussing dynamic); Samuel Issacharoff, *Governance and Legitimacy in the Law of Class Actions*, 1999 SUP. CT. REV. 337, 388 (1999) (same).

Federal jurisprudence and oversight by a federal judge protects against this. FRCP 23(g). A "defendant's ability to select its negotiating partner is eliminated when class actions are removed to federal court and related cases are consolidated before the same judge, who chooses lead counsel and gives him or her exclusive authority to negotiate a settlement." *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs.*

*Litig.*, 733 F. Supp. 2d 997, 1006 (E.D. Wis. 2010) (citing Kent M. Williams, *A Touch of Class: Reducing the Risk of "Sweetheart Deals"*, 62 BENCH & BAR OF MINN. 20, 21 (2005)).

As the Eleventh Circuit has found, where "the record appears to show that the plaintiffs' counsel… deliberately underbid the movants in an effort to collect attorney's fees while doing a fraction of the work that the movants' counsel did" and "was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible for the class, it violated its ethical duty to the class." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017) (citing Am. Bar Ass'n, Ethical Guidelines for Settlement Negotiations § 4.2.2 (2002) for its language that "[w]hen an attorney's fee is a subject of settlement negotiations, a lawyer may not subordinate the client's interest in a favorable settlement to the lawyer's interest in the fee."). Thus, where, as here, "[i]t is plain from the record that during the negotiations the interests of the named plaintiffs and [their counsel] were aligned with those of [defendants] and adverse to the [absent class member] movants' interests…. the plaintiffs cannot be expected to adequately represent the movants' interests." *Id.* at 697-698.

Given the importance of this issue, an expert in class action jurisprudence was engaged relating to the *Wayside* settlement process and the dangerous precedent it would create if successful. Professor Brian Fitzpatrick is a Professor of Law at Vanderbilt University. A former law clerk for The Honorable Antonin Scalia on the United States Supreme Court, he has written extensively on the importance of the class action process and its potential for abuse. *See, e.g.*, Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS (University of Chicago Press, 2019); Brian T. Fitzpatrick*, An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010). A copy of his *curriculum vitae* is attached with his scholarly declaration. **Exhibit A**. While his declaration speaks for itself, its conclusion bears repeating: the proposed *Wayside* settlement is a product of a collusive – and unlawful – reverse auction. *Indeed, this is a textbook case.*

As he explains in his declaration, "there is little doubt that this settlement" in *Wayside* "was negotiated under the pressure of a reverse auction." **Exhibit A, ¶9.** The *Wayside* settlement has the red and yellow flags of collusion. *Id.,* **¶¶11-12**. First, "counsel for *Wayside* secretly

negotiated a settlement to the exclusion of the other counsel."[3] Second, the settlement suddenly expanded the scope of the case to include class members or claims already pursued by other counsel. *Id.*, ¶11. Third, defendants conducted preferential or exclusive settlement negotiations with the counsel who settled. *Id.* Fourth, defendants settled with the counsel who is least experienced. *Id.* Fifth, defendants settled with the counsel who was in the more precarious or less threatening litigation position. *Id.*

Because the result of a reverse auction means that the class is not adequately represented, Professor Fitzpatrick explained – as have other circuits – that the presence of these red and yellow flags in this settlement means there should be "extra scrutiny by the court."

## II. The District Court failed to hold any hearing, allow opposition, or even undertake any review, let alone a rigorous one.

Ignoring Professor Fitzpatrick's opinion, the District Court approved the preliminary settlement, approved the appointment of class

---

[3] As an expert in class action reverse auctions, he has *never* "seen a lawyer attempt it while not only before the same judge but while competing leadership motions under FRCP 23(g) were already pending before that judge." **Exhibit A, ¶9**.

counsel, and appointment of class representatives without conducting *any* analysis into the Rule 23(a) factors or any scrutiny – let alone "extra scrutiny" – of the certification process in *Wayside*. *Wayside*, 1:14-cv-01274, RE 234, PageID # 4131-4148. This openly violates Rule 23(e)'s requirement of frontloading the proposed settlement's examination. In performing this role, a district court judge is "a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 280 (7th Cir. 2002). Therefore, appellate review of class settlements "is far from pro forma." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014).

The Supreme Court has changed Rule 23 in 2018 to mandate that judicial scrutiny of proposed class action settlements should be exercised *at the preliminary approval stage*—and not the final fairness hearing. Bolch Judicial Institute, Duke Law School, GUIDELINES AND BEST PRACTICES IMPLEMENTING 2018 AMENDMENT TO RULE 23 CLASS ACTION SETTLEMENT PROVISIONS at 1 ("Amended Rule 23(e)(1) requires a court to 'frontload' its examination" of the proposed settlement at the preliminary approval phase, "by considering many of the same procedural and substantive factors at the notice stage that it will consider at the [final]

approval stage."). "As amended, Rule 23(e)(1) provides that the court must direct notice to the class regarding a proposed class-action settlement only *after* determining that the prospect of class certification and approval of the proposed settlement justifies giving notice." FRCP 23, Committee Notes to 2018 Amendments (emphasis added). "Amended Rule 23(e)(1) effects the frontloading by specifying a new standard that a court should use in deciding whether to send notice of a proposed settlement to class members," requiring "the court to determine whether it 'will likely be able to approve' the proposed settlement" upon final approval and if, as here, "a litigation class has not previously been certified in the case, … whether [the court] could certify a settlement class." Bolch Judicial Inst., *supra* at 2.

Despite these new obligations, the District Court undertook no examination of the factors, conducted no analysis, and issued no opinion, even in the face of *Grainger's* filings sounding the alarm of a collusive settlement and imploring the Court to conduct a hearing. Instead, it just rubber-stamped the preliminary approval order attached to *Wayside's* motion, which (without surprise) was not opposed by the counties.

As such, the collusive settlement process combined with the rubber-stamped preliminary approval renders the District Court's actions an extreme abuse of discretion. In considering a request for preliminary approval, "the court should determine whether the compromise embodied in the decree is . . . tainted with collusion[.]" *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-666 (6th Cir. 2001). *See also In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (the court must determine whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations[.]") and *UAW*, 497 F.3d at 631 (the risk of "collusion" is a significant factor for a district court to consider when evaluating whether a proposed class settlement is "fair, reasonable, and adequate" for it to be approved). Despite the clear dictates of Rule 23 and the entire body of supportive caselaw, the District Court abandoned its seminal role as gatekeeper to allow a collusive settlement benefitting all but the class itself to take shape and ultimately vest without so much as a single hearing. Such an abuse of discretion should not be countenanced by this Court.

## CONCLUSION

For all the reasons discussed above, the negotiations were collusive. The District Court abused its discretion in not analyzing whether the presented settlement was collusive as a result of a reverse auction and not conducting the rigorous analysis the Supreme Court requires. Blindfolded rubber-stamping is not a proper substitute for the strictures of Rule 23(a) and (g). The proposed settlement's preliminary approval – when infected with collusion – falls outside the range of reasoned judicial approval.

## RELIEF REQUESTED

For the reasons described above, Petitioners Frederick Grainger Jr, Brian Behovitz, Mindy Calkins, and Bruce Corwin ask this Court to grant their FRAP 23(f) petition for immediate appeal of the erroneous class certification contained within the preliminary approval order of a collusive settlement.

Date: March 29, 2023

Donald R. Visser (P27961)
Visser & Associates
2480 44th Street, SE, Suite 150
Kentwood, MI 49512
(616) 531-9860
donv@visserlegal.com

E. Powell Miller (P39487)
Christopher D. Kaye (P61918)
The Miller Law Firm PC
950 W. University Drive, Suite 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com

/s/ Philip L. Ellison
Philip L. Ellison (P74117)
Outside Legal Counsel PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Matthew E. Gronda (P73693)
Gronda PLC
PO Box 70
St. Charles, MI 48655
(989) 233-1639
matt@matthewgronda.com

*Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type-volume limitations of the Sixth Circuit Rule 32(a)(7)(B).

This Petition has been prepared in proportional typeface using Century Schoolbook 14-point font. The brief, including headers and footnotes, contains 4,981 words according to the Word Count feature in the Microsoft Word program.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Date: March 29, 2023

/s/ Philip L. Ellison
Philip L. Ellison (P74117)
Outside Legal Counsel PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

*Attorney for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I emailed the foregoing to all counsel of record and, upon the Clerk of the Court docketing the same, the CM/ECF System will also notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: March 29, 2023

/s/ Philip L. Ellison
Philip L. Ellison (P74117)
Outside Legal Counsel PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

*Attorney for Petitioners*


EXHIBIT

A

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

*Wayside Church, et al., v. Van Buren County, et al.*

*Case No. 1:14-cv-01274*

## <u>DECLARATION OF BRIAN T. FITZPATRICK</u>

Brian T. Fitzpatrick, under penalty of perjury, declares as follows:

<u>I.  BACKGROUND AND QUALIFICATIONS</u>

1.      I am the Milton R. Underwood Chair in Free Enterprise and Professor of Law at

Vanderbilt University in Nashville, Tennessee.  I joined the Vanderbilt law faculty in 2007, after

serving as the John M. Olin Fellow at New York University School of Law in 2005 and 2006.  I

graduated from the University of Notre Dame in 1997 and Harvard Law School in 2000.  After

law school, I served as a law clerk to The Honorable Diarmuid O'Scannlain on the United States

Court of Appeals for the Ninth Circuit and to The Honorable Antonin Scalia on the United States

Supreme Court.  I also practiced law for several years in Washington, D.C., at Sidley Austin LLP.

My C.V. is attached as Exhibit 1.

2.      My teaching and research at Vanderbilt have focused on class action litigation.  I

teach the Civil Procedure, Federal Courts, and Complex Litigation courses.  In addition, I have

published a number of articles on class action litigation in such journals as the University of

Pennsylvania Law Review, the Journal of Empirical Legal Studies, the Vanderbilt Law Review,

the NYU Journal of Law & Business, the Fordham Law Review, and the University of Arizona

Law Review.  My work has been cited by numerous courts, scholars, and media outlets such as

the New York Times, USA Today, and the Wall Street Journal.  I have also been invited to speak

at symposia and other events about class action litigation, such as the ABA National Institutes on

Class Actions in 2011, 2015, 2016, 2017, and 2019; the Annual Conference of the ABA's Litigation Section in 2021; and the ABA Annual Meeting in 2012. Since 2010, I have also served on the Executive Committee of the Litigation Practice Group of the Federalist Society for Law & Public Policy Studies. In 2015, I was elected to the membership of the American Law Institute. In 2021, my colleague Randall Thomas and I became the editors of THE CAMBRIDGE HANDBOOK OF CLASS ACTIONS: AN INTERNATIONAL SURVEY (Cambridge University Press).

3.      In December 2010, I published an article in the Journal of Empirical Legal Studies entitled *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010). This article is still what I believe to be the most comprehensive examination of federal class action settlements and attorneys' fees that has ever been published. Unlike other studies of class actions, which have been confined to one subject matter or have been based on samples of cases that were not intended to be representative of the whole (such as settlements approved in published opinions), my study attempted to examine *every* class action settlement approved by a federal court over a two-year period (2006-2007). *See id*. at 812-13. As such, not only is my study an unbiased sample of settlements, but the number of settlements included in my study is also several times the number of settlements per year that has been identified in any other empirical study of class action settlements: over this two-year period, I found 688 settlements. *See id*. at 817. I presented the findings of my study at the Conference on Empirical Legal Studies at the University of Southern California School of Law in 2009, the Meeting of the Midwestern Law and Economics Association at the University of Notre Dame in 2009, and before the faculties of

many law schools in 2009 and 2010. Since then, this study has been relied upon regularly by

courts, scholars, and testifying experts.[1]

[1] *See, e.g.*, *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (relying on article to assess fees); *Kuhr v. Mayo Clinic Jacksonville*, No. 3:19-cv-453-MMH-MCR, 2021 WL 1207878, at *12-13 (M.D. Fla. Mar. 30, 2021) (same); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2020 WL 6891417, at *3 (S.D.N.Y. Nov. 24, 2020) (same); *Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-cv-815-PPS-MGG, 2020 WL 5627171, at *10 (N.D. Ind. Sept. 18, 2020) (same); *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 WL 3250593, at *5 (S.D.N.Y. June 16, 2020) (same); *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-cv-05541-JST, 2020 WL 1786159, at *11 (N.D. Cal. Apr. 7, 2020) (same); *Arkansas Teacher Ret. Sys. v. State St. Bank & Trust Co.*, No. CV 11-10230-MLW, 2020 WL 949885, 2020 WL 949885, at *52 (D. Mass. Feb. 27, 2020), appeal dismissed sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp., No. 20-1365, 2020 WL 5793216 (1st Cir. Sept. 3, 2020) (same); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *34 (N.D. Ga. Jan. 13, 2020) (same); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 3:07-cv-05634-CRB, 2019 WL 6327363, at *4-5 (N.D. Cal. Nov. 26, 2019) (same); *Espinal v. Victor's Cafe 52nd St., Inc.*, No. 16-CV-8057 (VEC), 2019 WL 5425475, at *2 (S.D.N.Y. Oct. 23, 2019) (same); *James v. China Grill Mgmt., Inc.*, No. 18 Civ. 455 (LGS), 2019 WL 1915298, at *2 (S.D.N.Y. Apr. 30, 2019) (same); *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (same); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657, at *2 (S.D.N.Y. Nov. 29, 2018) (same); *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 WL 4030558, at *5 (N.D. Cal. Aug. 23, 2018) (same); *Little v. Washington Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 38 (D.D.C. 2018) (same); *Hillson v. Kelly Servs. Inc.*, No. 2:15-cv-10803, 2017 WL 3446596, at *4 (E.D. Mich. Aug. 11, 2017) (same); *Good v. W. Virginia-Am. Water Co.*, No. 14-1374, 2017 WL 2884535, at *23, *27 (S.D.W. Va. July 6, 2017) (same); *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 385 (S.D.N.Y. 2017) (same); *Brown v. Rita's Water Ice Franchise Co. LLC*, No. 15–3509, 2017 WL 1021025, at *9 (E.D. Pa. Mar. 16, 2017) (same); *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (same); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 236 (N.D. Ill. 2016); *Ramah Navajo Chapter v. Jewell*, 167 F. Supp 3d 1217, 1246 (D.N.M. 2016); *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 WL 721680, at *42 (N.D. Cal. Jan. 28, 2016) (same); *In re Pool Products Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 4528880, at *19-20 (E.D. La. July 27, 2015) (same); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11–cv–4462, 2015 WL 2147679, at *2-4 (N.D. Ill. May 6, 2015) (same); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11–cv–4462, 2015 WL 1399367, at *3-5 (N.D. Ill. Mar. 23, 2015) (same); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 797 (N.D. Ill. 2015) (same); *In re Neurontin Marketing and Sales Practices Litig.*, 58 F.Supp.3d 167, 172 (D. Mass. 2014) (same); *Tennille v. W. Union Co.*, No. 09–cv–00938–JLK–KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (same); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 349-51 (S.D.N.Y. 2014) (same); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 444-46 & n.8 (E.D.N.Y. 2014) (same); *In re Fed. Nat'l Mortg. Association Sec., Derivative, and "ERISA" Litig.*, 4 F. Supp. 3d 94, 111-12 (D.D.C. 2013) (same); *In re Vioxx Prod.*

4.      In addition to my empirical works, I have also published many law-and-economics papers on the incentives of attorneys and others in class action litigation. *See*, *e.g.*, Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 Fordham L. Rev. 1151 (2021); Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little*, 158 U. Pa. L. Rev. 2043 (2010); Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009). Much of this work was discussed in a book I published with the University of Chicago Press entitled THE CONSERVATIVE CASE FOR CLASS ACTIONS (2019). The thesis of the book is that the so-called "private attorney general" is superior to the public attorney general in the enforcement of the rules that free markets need in order to operate effectively and that courts should provide proper incentives to encourage such private attorney general behavior.

5.      I have been asked by counsel for Fredrick Grainger, Mindy Calkins, and Brian Behovitz to opine on whether the Court should grant preliminary approval to the settlement in this case. In order to formulate my opinion, I reviewed a number of documents; I have attached a list of these documents in Exhibit 2.

6.      A summary of my opinions are as follows:

- First, any time class action settlements are negotiated in the midst of competition between different class action lawyers seeking to represent the same class members, there is an increased danger the settlements will be

---

*Liab. Litig.*, No. 11–1546, 2013 WL 5295707, at \*3-4 (E.D. La. Sep. 18, 2013) (same); *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 98-99 (D.D.C. 2013) (same); *In re Se. Milk Antitrust Litig.*, No. 2:07–CV 208, 2013 WL 2155387, at \*2 (E.D. Tenn., May 17, 2013) (same); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1081 (S.D. Tex. 2012) (same); *Pavlik v. FDIC*, No. 10 C 816, 2011 WL 5184445, at \*4 (N.D. Ill. Nov. 1, 2011) (same); *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 40 (D.D.C. 2011) (same); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1033 (N.D. Ill. 2011) (same); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 359 (E.D.N.Y. 2010) (same).

inadequate and courts should give the settlements extra scrutiny. Competition can lead to inadequate settlements because there is pressure on the competing lawyers to be the first to settle since, if they are not first, they may be shut out of any fee award. This is sometimes called a "reverse auction." The settlement here was clearly negotiated under this competitive pressure and it should be given extra scrutiny.

- Second, some courts and commentators have gone further and identified a number of red or yellow "flags" that suggest a reverse auction may be afoot. Many of these flags are present here, confirming that this settlement should be given extra scrutiny.

- Third, this settlement cannot survive proper scrutiny on the current record before the court. The settlement contains many features that appear to render it inadequate and counsel for Wayside have not explained how these features are defensible. The court should not grant preliminary approval unless and until counsel can explain why these features are not fatal flaws.

## II. THIS SETTLEMENT WAS NEGOTIATED UNDER REVERSE AUCTION PRESSURE

7.     A reverse auction occurs in class action litigation when a defendant uses the pressure of rivalrous, competing class actions to drive down the price at which class counsel in one of the actions is willing to settle. *See* Federal Judicial Center, Manual for Complex Litigation §21.61 (4th ed. 2004) ("[A] reverse auction [is where] a defendant selects among attorneys for competing classes and negotiates an agreement with the attorneys who are willing to accept the lowest class recovery . . . ."). Courts and commentators have been concerned about them for decades, *see, e.g.*, John C. Coffee, Jr., *The Corruption of the Class Action: The New Technology*

*of Collusion*, 80 Cornell L. Rev. 851, 853 (1995) ("[D]efendants can effectively conduct a reverse auction among plaintiffs' attorneys, seeking the lowest bidder from the large population of plaintiffs' attorneys."), but perhaps the most extensive treatment is Rhonda Wasserman's *Dueling Class Actions*, 80 B.U. L. Rev. 461 (2000). The reason counsel in rivalrous actions feel pressure to take a low settlement offer is because, once one class action vehicle reaches settlement, the competing class actions will be dismissed and the lawyers representing them will receive no fees. *See id.* at 472 ("Each attorney understands that once the class member's claims are resolved by judgment or settlement, any other suits pending on their behalf raising the same claim will be dismissed . . . . Class counsel also knows that she will receive nothing if the class she filed is dismissed. Thus, each lawyer for the class realizes that it is in her own self-interest to race toward judgment or settlement before any other lawyer representing the same class on the same claim . . . ."). Thus, even though accepting a lower settlement offer can also lower the winning class counsel's fee award (to the extent that the fee award is tied to the amount of the settlement, as it usually is), it is still rational for class counsel to accept the lower offer because, if they hold out for more, they can end up with nothing at all. That is, a percentage of a low settlement is better than a percentage of no settlement. Defendants are aware of this pressure and use it to induce one of the competitors to accept a settlement that he or she would not accept in the absence of competition. *See id.* at 473 ("The defendant is aware that class counsel is under substantial pressure to settle. Based on this knowledge, the defendant may make a 'low ball' offer in an effort to settle the class claim for far less than it is worth. [T]he pressure on class counsel . . . may be extreme."). The reverse auction is therefore like the famous prisoner's dilemma from game theory: the class is better off if all counsel cooperate with one another and together hold out for a better settlement, but it is rational for each counsel to defect and strike an inferior deal on his or her own.

*Id*. at 474 (2000) ("[C]lass counsel face a dilemma similar to the classic 'prisoner's dilemma' of game theory.").

8.     It is important to note that, although the term "reverse auction" conjures up images of parties "bidding" against one another, this is in no way necessary for defendants to use rivalrous actions to obtain inadequate settlements.  So long as the competing counsel are aware of each other and so long as the defendant is aware of them, then the pressure to be the first to settle will always exist and the defendant can take advantage of it with low-ball settlements.  Moreover, although we sometimes refer to reverse auctions as "collusion" between counsel and the defendant, nothing intentionally sinister need take place for the pressure of a reverse auction to manifest itself in an inadequate settlement for the class.  Everyone involved is simply acting rationally: the defendant wants the best deal for itself and competing counsel want to avoid being the one left holding the bag.  In other words, the reverse auction is just one of many ways in which rational self interest in class action litigation can lead to bad outcomes if there is insufficient oversight and correction by courts.

9.     In my opinion, there is little doubt that this settlement was negotiated under the pressure of a reverse auction.  Numerous class actions were filed seeking to represent some or all of the same class members, but most of the putative class counsel decided to cooperate with one another.  *See Calkins, et al. v. Kent Cty., et al.*, Case No. 1:21-cv-00062 (W.D. Mich.) ECF No. 51 PageID.1325 (expressing support for the *Grainger* team); *Corwin v Van Buren;* Case No. 1:21-cv-00082 (Van Buren County only) (same counsel as *Calkins*); *Sattler v Kent*, Case No. 22-cv-00316 (almost all W.D. Mich. Counties) (same).  As I noted above, game theory suggests that cooperation is how counsel can prevent a reverse auction.  But cooperation requires unanimous participation to succeed.  If there is even one defection, a reverse auction can ensue.  And there

was indeed a defection here: counsel for Wayside secretly negotiated a settlement to the exclusion of the other counsel.  In fact, they defected *while competing petitions to be appointed class counsel were pending before this very court*.  To be entirely frank, this surprised me because another way to prevent reverse auctions is to litigate the competing cases before the same judge.  *See* Wasserman, *supra*, at 509 ("If all dueling class actions filed on behalf of the same class could be transferred to a single court and consolidated into a single proceeding, a number of the problems described [herein] would disappear.").  If everyone is in front of the same judge, it is more obvious that one lawyer may have capitulated to the defendant in order to try to settle a case from underneath competing lawyers; such lawyers therefore tend not to be so brazen to attempt it.  But not so here.  Indeed, I do not believe I have ever seen a lawyer attempt it while not only before the same judge but while competing leadership motions under Fed.R.Civ.P. 23(g) were already pending before that judge.  This is all a long way of saying that it is readily apparent that the relationship among counsel here was rivalrous rather than cooperative and, therefore, the pressure to accept an inadequate settlement in order to be the first to settle was inevitable.

10.     Given that the dangers of inadequate settlements are greater when settlements are negotiated under rivalrous, reverse-auction pressure, courts should give such settlements extra scrutiny.  Greater danger requires greater caution.  In my opinion, that means the court should give this settlement extra scrutiny.

## III. THIS SETTLEMENT SUFFERS FROM A NUMBER OF RED AND YELLOW REVERSE AUCTION "FLAGS"

11.     Some courts and commentators have gone even further and identified a number of red or yellow "flags" where a reverse auction is most likely to be afoot.  *See, e.g.*, Jonathan Macey & Geoffrey Miller, *Judicial Review of Class Action Settlements*,1 J. L. Analysis 167, 191 (2009).  In my opinion, many of them are present here:

- *The settlement suddenly expanded the scope of the case to include class members or claims already pursued by other counsel.*[2] The operative Wayside complaint named only Van Buren County as a defendant and sought to pursue claims against other counties through the device of a defendant class. This would have required counsel for Wayside to certify both a plaintiff class and a defendant class in the same case to recover for class members in multiple counties. This is known as a "bilateral class action." For the reasons I explain below, bilateral class actions are extraordinarily uncommon to attempt let alone to succeed. At some point, counsel for Wayside apparently realized this and eventually sought to name the other counties directly as defendants. But it was denied leave to do so. Thus, at the time the settlement was negotiated, counsel for Wayside could pursue claims only for putative class members in Van Buren. Yet, the settlement now encompasses class members in almost all the other counties in the Western District. Moreover, the settlement now includes lienholders as well as property holders, which, in addition to expanding the class, also creates intraclass conflicts as discussed below.

- *The defendant conducted preferential or exclusive settlement negotiations with the counsel who settled.*[3] There is no dispute that the defendants here

---

[2] *See, e.g.,* Macey & Miller, *supra*, at 191 ("sudden expansion of the scope of the settled case"); Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges 21 (3d ed. 2010) ("settlement . . . with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, an especially suspicious circumstance").

[3] *See, e.g.,* Macey & Miller, *supra*, at 191 ("settlement bargaining limited to one of the competing groups of plaintiffs' attorneys"); Sean Griffith & Alexandra Lahav, *The Market for Preclusion in Merger Litigation*, 66 Vand. L. Rev. 1053, 1097 n.211 (2013) ("preferential negotiations with one set of plaintiffs' attorneys").

exclusively negotiated with counsel for Wayside. Indeed, the negotiations were kept entirely secret from counsel for Grainger, Behovitz, and Calkins.

- *The defendant settled with the counsel who is least experienced.*[4] It is always a delicate matter to opine on the relative qualifications of competing class action firms, but, based on the competing motions for appointment as class counsel as well as each firm's website resume, there is little doubt in my mind that the defendants would have concluded that the Wayside team was less experienced than the Grainger-Behovitz-Calkins team.

- *The defendant settled with the counsel who was in the more precarious or less threatening litigation position.*[5] As I noted above, the only defendant named in the Wayside complaint at the time the settlement was negotiated was Van Buren County. Counsel's attempt to add other counties was rejected by this court. Thus, the only way in which they might have added claims for plaintiffs in other counties is through a bilateral class action. This would have required counsel for Wayside to certify both a plaintiff class and a defendant class in the very same case. To say this strategy was a longshot is a gross understatement. As Professor John Coffee has noted, defendant classes are "rare as a unicorn." John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L.Rev. 370, 388 (2000). Even

---

[4] *See, e.g.*, 4 Newberg, *supra*, at §13.60 ("settlement with the least experienced plaintiffs' counsel").

[5] *See, e.g.*, Macey & Miller, *supra*, at 191 ("settlement with the group of attorneys who present a less substantial threat of carrying the case forward to trial"); Class Action Pocket Guide, *supra*, at 21 ("[T]he defendant 'selected counsel confronted with a most precarious position' . . . .").

more rare is a plaintiff class pursuing a defendant class—i.e., a bilateral class action. These are so rare in part because they are fraught with peril. To begin with, there is a question of how such a class action can satisfy Article III's standing requirement because most plaintiff class members will not have standing against most defendant class members. This is illustrated by this Court's rejection of the controversial "juridical link doctrine," *Grainger*, Case No. 1:19-cv-00501-PLM-PJG, ECF No. 218, and it is apparently what led counsel for Wayside to add representative plaintiffs from every county in the amended complaint accompanying the settlement to avoid having to rely on the doctrine in their proposed plaintiff class. *See* Brief at 19. But even if the doctrine can be avoided in this way for a plaintiff class, it cannot be avoided in a bilateral class action like the one that was attempted here. Next, how do you find a defendant to represent all the members of the defendant class action? Defendants are involuntary litigants. Yet, the Due Process Clause requires class representatives to be zealous representatives of the class. If the named defendant doesn't want the job, how can they be zealous? If they do want the job, why should we think they *would* be zealous? Who would want to take on such a responsibility unless they were in cahoots with counsel for the plaintiffs? Indeed, fear over collusion between representative defendants and counsel for plaintiffs was so great when the modern class action rule was written in 1966, it almost derailed the entire endeavor. *See* Brian T. Fitzpatrick, *The Ironic History of Rule 23*, pp. 11-15, *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3020306. In light of these

problems with bilateral class actions and the inability to amend their complaint to add the other counties directly, counsel for Wayside appeared to have little to no leverage over the other counties during settlement negotiations. This is obviously not a recipe for a good deal for the class. And it is in stark contrast to the litigation position in which the Grainger-Behovitz-Calkins team had the counties: they were all named defendants. See *Grainger*, Case No. 1:19-cv-00501-RJJ-PJG, Amended Complaint at ¶ 5, ECF No. 14 PageID.281-282; *Calkins et al v Kent Co. at al*, Case No. 1:21-cv-00062, Complaint at ¶ 4, ECF No. 1, PageID.4.

12.     The presence of these red and yellow flags confirms my opinion that this settlement should be given extra scrutiny by the court.

## IV. PROPER SCRUTINY OF THE SETTLEMENT SHOWS IT SHOULD NOT BE PRELIMINARILY APPROVED ON THIS RECORD

13.     In my opinion, the settlement contains many features that suggest counsel for Wayside succumbed to the pressure of a reverse auction and agreed to an inadequate settlement under Fed. R. Civ. P. 23(e) in order to be the first to settle. Counsel for Wayside have nowhere attempted to justify these features. Yet, the Federal Rules of Civil Procedure now require courts to "frontload" settlement consideration by demanding detailed evidence before preliminary approval. *See* Steven Gensler & Lumen Mulligan, Rule 23, 1 Federal Rules of Civil Procedure, Rules and Commentary (Feb. 2023) ("The 2018 amendments to Rule 23 implement what has been called the 'frontloading' model for preliminary approval of settlement classes. [The] effect of this requirement is that lawyers seeking to tee up settlement classes will be required to provide significant . . . detailed information, including estimates of the likely range of litigated outcomes

if the case is not settled, the risks of full litigation, . . . .").  Unless and until counsel for Wayside justifies these features, it is my opinion that the court should not grant preliminary approval:

14.     First, this is a so called "claims made" settlement.  What that means is that how much the defendants will pay out depends upon how many class members file claims.  Class members who do not file claims will see their money revert back to the defendants.  Claims-made settlements have long been disfavored by courts and commentators.  *See, e.g.*, Howard M. Erichson, *Aggregation as Disempowerment: Red Flags in Class Action Settlements*, 92 Notre Dame L. Rev. 859, 873, 892-93 (2016) (listing "claims-made settlements" among the "red flags" in class action settlements that "warrant closer scrutiny or outright rejection" and noting that they "have become uncommon in the face of judicial disfavor"); Manual for Complex Litigation, Fourth § 21.61, at 310-311 (identifying "cumbersome claims procedures that many members will be unlikely to claim benefits" as one of "a number of recurring potential abuses in class action litigation that judges should be wary of as they review proposed settlements," "particularly" where, as here, "the settlement provides that the unclaimed portions of the fund will revert to the defendants"); United States District Court of the Northern District of California, Procedural Guidance for Class Action Settlements, Published November 1, 2018; modified December 5, 2018 and August 4, 2022 at 1(g) (available at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements) (requiring approval motions to include "[i]n light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.").  The reasons are many, *see id*., but one in particular is most relevant here: claims-made settlements make it difficult to gauge what the ultimate value of the settlement is because the ultimate value of the settlement

will depend upon information that is not known at the approval stage—i.e., how many class members will file claims. How can a court conclude that a settlement is fair, adequate, and reasonable under Rule 23(e) if it does not yet know how much the settlement will require defendants to pay? It is very difficult. Settlements with impressive "face" valuations that ultimately pay out very little have led to widespread ridicule of the class action system. The better way to settle class actions is with a common fund that will not revert to the defendants. The fund can remain open for claims indefinitely, or be allocated to class members who file claims on a pro rata basis to ensure there are no leftover monies. Even if allocated in fixed amounts, common fund settlements can insure no leftover monies revert to the defendants by giving the monies to charity instead, what are known as "cy pres" payments. *See* American Law Institute, Principles of the Law of Aggregate Litigation § 3.07 cmt. b ("A cy pres award to a recipient whose interests closely approximate those of the class is preferable to either [escheat to the state or reversion to the defendant]."); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir.2004) ("[T]he reason for appealing to cy pres is to prevent the defendant from walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement . . . to the class members.") (cited and as-characterized in *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 623 (N.D. Ohio 2016). Although claims-made settlements are not per se inadequate, they are almost always inferior to non-reversionary common fund settlements. Yet, counsel for Wayside have nowhere explained why they negotiated a claims-made settlement instead.

15.     Second, given the likely claims rate here, this settlement is likely to pay out only pennies on the dollar. The best data we have on claims rates comes from consumer class actions and suggests that the median claims rate is 9 percent when individual notice can be given like it can be here. *See* FTC Staff Report, Consumers and Class Actions, pp. 21-22, *available at*

https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. Although the per capita settlement proceeds here are greater than in the typical consumer settlement and claims rates tend to be correlated with the magnitude of the proceeds, in the claims-made, surplus-proceeds class action settlement against Oakland County, the claims rate was, at last count, only 6.3 percent. *See* Declaration of Amy Lechner of Simpluris, Inc. Regarding Notice and Claims Administration, *Bowles v Sabree*, Case 2:20-cv-12838-LVP-KGA (E.D. Mich.), ECF No. 100, PageID.2651-53 (from September through November, 131 valid claims received for 3,336-member class with 2,084 properties, amounting to a 3.92 percent claims rate calculated by class member and 6.3 percent by property, but the claims period extended beyond the period for which information was reported). Thus, 9 percent may be a rosy estimate of the claims rate here. But, regardless of whether we use 6% or 9%, given that class members who file claims can recover no more than 80% of the surplus proceeds from their properties, *see* Proposed Settlement Agreement Pg. 24, § 8; Pg. 5, §1.32, this means that the class as a whole will recover only 5 to 7 percent of their surplus proceed under this settlement.[6] And that doesn't even count the considerable prejudgment interest the class members may very well be entitled to. *See Freed v. Thomas*, No. 17-CV-13519, 2021 WL 942077, at *4 (E.D. Mich. Feb. 26, 2021); *Pung v. Cty. of Isabella*, 2022 WL 4586122 (E.D. Mich. Sept. 29, 2022).

16. A recovery rate this low is not per se inadequate—indeed, it is common in securities fraud class actions—but, in order to justify it, the risks remaining in the litigation would have to

---

[6] I understand that counsel in the *Grainger* matter has argued for a larger potential damages claim based on the market value of the Class Members' properties. My analysis here does not account for the fact that the proposed *Wayside* settlement disclaims any such damages in favor of a recovery based on surplus auction proceeds.

be substantial. Yet, in my opinion, counsel for Wayside have not explained how a discount of over 90% on the class's damages is justified here:

- The Michigan Supreme Court has already said that what happened to the class is a taking under the state constitution, *see Rafaeli, LLC v. Oakland County*, 952. N.W. 434 (Mich. 2020), and the Sixth Circuit has already said it is also a taking under the U.S. Constitution, *see Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022). Counsel for Wayside suggest there is some uncertainty whether these decisions extend to persons who did not have claims pending at the time *Rafaeli* was decided. *See* Brief at 25. But the only decision they cite for the uncertainty, *Proctor v. Saginaw Cnty. Bd. of Commissioners*, 2022 WL 67248 (Mich. Ct. App. Jan. 6, 2022), *rejected* the argument that *Rafaeli* should not be applied retroactively. Counsel for Wayside say that Proctor's "holding" was "that *Rafaeli* did not apply retroactively to unnamed putative class members who did not raise and preserve claims," but this is false. The court had before it only named plaintiffs who had claims pending when *Rafaeli* was decided. It could not and did not "hold" anything with respect to persons not before it. Counsel for Wayside's characterization of *Proctor* has been rejected by subsequent courts. As *Proctor* itself noted, the general rule is that judicial decisions apply to litigants who have not yet brought claims unless there are "exigent circumstances." Counsel for Wayside have not explained how an exception for "exigent circumstances" can justify a discount of over 90%.

- Counsel for Wayside also cited the possibility of *Pullman* abstention on the federal taking claim. *See* Brief at 25-26 (citing *Sinclair v. Meisner*, 2022 WL

18034473 (6th Cir. Dec. 29, 2022)).  But *Pullman* abstention only delays the resolution of the federal claim, it does not affect the class's chances of prevailing or its damages and it does not affect the state taking claim at all. Delay on one of the claims here might be worth some discount, but counsel for Wayside have not explained how it justifies a discount of over 90%.

- Counsel for Wayside also cited the new state legislation, Public Act 256 of 2020, that the counties have argued displaces state and federal takings claims. *See* Brief at 26.  But all of the state courts to consider this argument have thus far rejected it.  *See Breiner*, 2022 WL 17364770; *Proctor v. Saginaw Cnty. Bd. of Commissioners*, 340 Mich. App. 1, 26, 985 N.W.2d 193, 209 (2022).  Again, counsel for Wayside have not explained how the argument can nonetheless justify a discount of over 90%.

- Counsel for Wayside also cited questions about how to allocate proceeds among multiple claimants, including lienholders.  *See* Brief at 26.  But, by definition, allocation questions go to how to divide the pot, not how big the pot should be in the first place.  Counsel for Wayside have not explained how such questions justifies any discount at all.

- Counsel for Wayside also cited questions about res judicata.  *See id.*  The case they cited held that property owners who sued once cannot sue again.  *Hall v. Meisner*, 2022 WL 7478163, at *1-*2 (6th Cir. Oct. 13, 2022).  But counsel for Wayside have not disclosed to the court how many class members have already sued their counties in order to quantify this concern.  Without this information, it is impossible to assess whether it justifies a discount of over 90%.

- Counsel for Wayside also cited questions about the statute of limitations. *See* Brief at 26. The question of accrual would appear to have at most a marginal impact on damages at the edge of the class period. The question of tolling appears to be even less impactful. The case cited by counsel for Wayside held that this very lawsuit tolled the statute of limitations for all the putative class members based on a longstanding doctrine known as *American Pipe* tolling. *Grainger v. County of Ottawa*, 2021 WL 790771, *8 (W.D. Mich. 2021). Counsel for Wayside have not explained what the "risk" here is at all. Without this explanation, it is impossible to assess whether it justifies a discount of over 90%.

17.     Instead of quantifying these risks, counsel for Wayside focus instead on the recovery class members who file claims will receive. *See* Brief at 23-24. They argue that these class members will recover 80% of their surplus proceeds. But focusing on the class members who file claims rather than the class as a whole obscures the actual compensatory and deterrent value of this settlement. Rather, it focuses instead on the *potential* compensatory and deterrent value. It treats as equivalent a settlement where one person files a claim and a settlement where thousands do. As I said above, class action settlements with impressive "face" valuations but pitiful actual payouts have brought disrepute on the class action system. For this reason, it is my opinion that the only way to assess whether a claims-made settlement is adequate or not is to figure in the likely claims rate. As I said, the Oakland County settlement suggests that rate will be low and therefore the class's recovery here will be low as well.

18.     Ironically, counsel for Wayside cites the Oakland County settlement in defense of this one. In my opinion, the Oakland County settlement is not a model by any means—it was a

claims-made settlement as well—but, even still, this settlement does not compare favorably to it. To begin with, the class members who filed claims there received more than the class members who file claims here will. Counsel for Wayside said the class members there received only 79.5% of their surplus proceeds, *see id*. at 11, but that would have been true only if every class member filed a claim. Unlike this settlement, that settlement reallocated some unclaimed monies to the class members who filed claims. Thus, the class members who filed claims there ended up receiving 100% of their surplus proceeds plus 100% of their prejudgment interest. *See Bowles* ECF 61-2 ¶¶ 15.b & 15.e & ECF 98-1 ¶ 2.b. And this is despite the fact that the litigation risk was greater at the time the Oakland County litigation settled than it is now because the post-*Proctor* decisions favoring the class members on retroactivity had not yet been decided. *See Schafer v. Kent County*, 2022 WL 4389922 (Mich. Ct. App. Sep. 22, 2022); *Breiner v. State of Michigan,* 2022 WL 17364770 (Mich. Ct. App. Dec. 1, 2022). Counsel for Wayside have not explained why the class members here should recover less than those in Oakland County despite the post-*Proctor* decisions in the meantime. Third, the settlement abandons some putative class members by truncating the class period without explanation. Wayside filed its lawsuit in December 2014. Yet, the class period only goes back to January 2013. *See* Proposed Agreement (*Wayside* ECF No. 171-5) at §1.11. This is despite the fact that the statute of limitations for the federal taking claim is three years, *Grainger v. Ottawa Co.,* No. 1:19-cv-00501 ECF No. 127, PageID.3089, and for the state taking claim six years, see *Hart v Detroit*, 416 Mich 488; 331 NW2d 438 (1982). Thus, years of putative class members appear to have been abandoned by this settlement and left to fend for themselves. Yet, counsel for Wayside nowhere explained why.

19. Finally, unlike the Oakland County settlement, this settlement adds lienholders to the class. *See* Proposed Agreement (*Wayside* ECF No. 171-5) at § 3.5.4. Counsel for Wayside

touts this as a feature of the settlement, *see* Brief at 11-12, but it may create a bug instead: lienholders and property owners have diametrically opposed interests; they are literally in zero-sum competition for the settlement proceeds. *See* Proposed Agreement (*Wayside* ECF No. 171-5) at §§ 8.2.1, 8.2.2 (providing an allocation method between the two). The U.S. Supreme Court has said that it is impossible for undivided counsel to adequately represent class members who have fundamentally conflicting interests. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (affirming denial of certification of settlement class that included both injured and uninjured class members because "[i]n significant respects, the interests of those within the single class are not aligned": "[f]or the currently injured, the critical goal is generous immediate payments" whereas "[t]hat goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future"). Settlements can only be approved in such circumstances if they are negotiated through subclasses with their own separate and independent counsel. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 856 (1999) ("[I]t is obvious after *Amchem* that a class divided . . . requires division into homogeneous subclasses . . ., with separate representation to eliminate conflicting interests of counsel.*"*). There is no indication from counsel for Wayside that that was the case here.

Nashville, TN

March 22, 2023

Brian T. Fitzpatrick

# Exhibit 1

# BRIAN T. FITZPATRICK

Vanderbilt University Law School
131 21st Avenue South
Nashville, TN 37203
(615) 322-4032
brian.fitzpatrick@law.vanderbilt.edu

## ACADEMIC APPOINTMENTS

**VANDERBILT UNIVERSITY LAW SCHOOL**, *Milton R. Underwood Chair in Free Enterprise*, 2020 to present
- *FedEx Research Professor*, 2014-2015
- *Professor of Law*, 2012 to present
- *Associate Professor*, 2010-2012; *Assistant Professor*, 2007-2010
- Classes: Civil Procedure, Complex Litigation, Federal Courts
- Hall-Hartman Outstanding Professor Award, 2008-2009
- Vanderbilt's Association of American Law Schools Teacher of the Year, 2009

**HARVARD LAW SCHOOL**, *Visiting Professor*, Fall 2018
- Classes: Civil Procedure, Litigation Finance

**FORDHAM LAW SCHOOL**, *Visiting Professor*, Fall 2010
- Classes: Civil Procedure

## EDUCATION

**HARVARD LAW SCHOOL**, J.D., *magna cum laude*, 2000
- Fay Diploma (for graduating first in the class)
- Sears Prize, 1999 (for highest grades in the second year)
- *Harvard Law Review*, Articles Committee, 1999-2000; Editor, 1998-1999
- *Harvard Journal of Law & Public Policy*, Senior Editor, 1999-2000; Editor, 1998-1999
- Research Assistant, David Shapiro, 1999; Steven Shavell, 1999

**UNIVERSITY OF NOTRE DAME**, B.S., Chemical Engineering, *summa cum laude*, 1997
- First runner-up to Valedictorian (GPA: 3.97/4.0)
- Steiner Prize, 1997 (for overall achievement in the College of Engineering)

## CLERKSHIPS

**HON. ANTONIN SCALIA**, Supreme Court of the United States, 2001-2002

**HON. DIARMUID O'SCANNLAIN**, U.S. Court of Appeals for the Ninth Circuit, 2000-2001

## EXPERIENCE

**NEW YORK UNIVERSITY SCHOOL OF LAW**, Feb. 2006 to June 2007
*John M. Olin Fellow*

**HON. JOHN CORNYN**, United States Senate, July 2005 to Jan. 2006
*Special Counsel for Supreme Court Nominations*

**SIDLEY AUSTIN LLP**, Washington, DC, 2002 to 2005
*Litigation Associate*

## BOOKS

THE CAMBRIDGE HANDBOOK OF CLASS ACTIONS: AN INTERNATIONAL SURVEY (Cambridge University Press 2021) (ed., with Randall Thomas)

THE CONSERVATIVE CASE FOR CLASS ACTIONS (University of Chicago Press 2019) (winner of the Pound Institute's 2022 Civil Justice Scholarship Award)

## ACADEMIC ARTICLES

*Distributing Attorney Fees in Multidistrict Litigation*, 13 J. Leg. Anal. 558 (2021) (with Ed Cheng & Paul Edelman)

*A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, 89 FORD. L. REV. 1151 (2021)

*Many Minds, Many MDL Judges*, 84 L. & Contemp. Problems 107 (2021)

*Objector Blackmail Update: What Have the 2018 Amendments Done?*, 89 FORD. L. REV. 437 (2020)

*Why Class Actions are Something* both *Liberals* and *Conservatives Can Love*, 73 VAND. L. REV. 1147 (2020)

*Deregulation and Private Enforcement*, 24 LEWIS & CLARK L. REV. 685 (2020)

*The Indian Securities Fraud Class Action: Is Class Arbitration the Answer?*, 40 NW. J. INT'L L. & BUS. 203 (2020) (with Randall Thomas)

*Can the Class Action be Made Business Friendly?*, 24 N.Z. BUS. L. & Q. 169 (2018)

*Can and Should the New Third-Party Litigation Financing Come to Class Actions?*, 19 THEORETICAL INQUIRIES IN LAW 109 (2018)

*Scalia in the Casebooks*, 84 U. CHI. L. REV. 2231 (2017)

*The Ideological Consequences of Judicial Selection*, 70 VAND. L. REV. 1729 (2017)

*Judicial Selection and Ideology*, 42 OKLAHOMA CITY UNIV. L. REV. 53 (2017)

*Justice Scalia and Class Actions: A Loving Critique,* 92 NOTRE DAME L. REV. 1977 (2017)

*A Tribute to Justice Scalia: Why Bad Cases Make Bad Methodology,* 69 VAND. L. REV. 991 (2016)

*The Hidden Question in* Fisher, 10 NYU J. L. & LIBERTY 168 (2016)

*An Empirical Look at Compensation in Consumer Class Actions,* 11 NYU J. L. & BUS. 767 (2015) (with Robert Gilbert)

*The End of Class Actions?*, 57 ARIZ. L. REV. 161 (2015)

*The Constitutionality of Federal Jurisdiction-Stripping Legislation and the History of State Judicial Selection and Tenure*, 98 VA. L. REV. 839 (2012)

Twombly *and* Iqbal *Reconsidered*, 87 NOTRE DAME L. REV. 1621 (2012)

*An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010) (selected for the 2009 Conference on Empirical Legal Studies)

*Do Class Action Lawyers Make Too Little?*, 158 U. PA. L. REV. 2043 (2010)

*Originalism and Summary Judgment*, 71 OHIO ST. L.J. 919 (2010)

*The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (selected for the 2009 Stanford-Yale Junior Faculty Forum)

*The Politics of Merit Selection*, 74 MISSOURI L. REV. 675 (2009)

*Errors, Omissions, and the Tennessee Plan*, 39 U. MEMPHIS L. REV. 85 (2008)

*Election by Appointment: The Tennessee Plan Reconsidered*, 75 TENN. L. REV. 473 (2008)

*Can Michigan Universities Use Proxies for Race After the Ban on Racial Preferences?*, 13 MICH. J. RACE & LAW 277 (2007)

*Strict Scrutiny of Facially Race-Neutral State Action and the Texas Ten Percent Plan*, 53 Baylor L. Rev. 289 (2001)


**BOOK CHAPTERS**

*Climate Change and Class Actions* in CLIMATE LIBERALISM: PERSPECTIVES ON LIBERTY, PROPERTY, AND POLLUTION (Jonathan Adler, ed., Palgrave Macmillan 2023)

*How Many Class Actions are Meritless?,* in THE CAMBRIDGE HANDBOOK OF CLASS ACTIONS: AN INTERNATIONAL SURVEY (ed., with Randall Thomas, Cambridge University Press 2021)

*The Indian Securities Fraud Class Action: Is Class Arbitration the Answer?, in* THE CAMBRIDGE HANDBOOK OF CLASS ACTIONS: AN INTERNATIONAL SURVEY (ed., with Randall Thomas, Cambridge University Press 2021) (with Randall Thomas)

*Do Class Actions Deter Wrongdoing?* in THE CLASS ACTION EFFECT (Catherine Piché, ed., Éditions Yvon Blais, Montreal, 2018)

*Judicial Selection in Illinois* in AN ILLINOIS CONSTITUTION FOR THE TWENTY-FIRST CENTURY (Joseph E. Tabor, ed., Illinois Policy Institute, 2017)

*Civil Procedure in the Roberts Court* in BUSINESS AND THE ROBERTS COURT (Jonathan Adler, ed., Oxford University Press, 2016)

*Is the Future of Affirmative Action Race Neutral?* in A NATION OF WIDENING OPPORTUNITIES: THE CIVIL RIGHTS ACT AT 50 (Ellen Katz & Samuel Bagenstos, eds., Michigan University Press, 2016)

## ACADEMIC PRESENTATIONS

*Non-Securities Class Action Settlements in CAFA's First Eleven Years*, University of Florida Law School, Gainesville, FL (Feb. 6, 2023)

*Entrapment of the Little Guy: Resisting the Erosion of Investor, Employee and Consumer Protections,* Institute for Law and Economic Policy, San Diego, CA (Jan. 27, 2023)

*A New Source of Data for Non-Securities Class Actions,* William & Mary Law School, Williamsburg, VA (Nov. 10, 2022)

*Can Courts Avoid Politicization in a Polarized America?*, American Bar Association Annual Meeting, Chicago, IL (Aug. 5, 2022) (panelist)

*A New Source of Data for Non-Securities Class Actions,* Seventh Annual Civil Procedure Workshop, Cardozo Law School, New York, NY (May 20, 2022)

*Resolution Issues in Class Actions and Mass Torts,* Miami Law Class Action & Complex Litigation Forum, University of Miami School of Law, Miami, FL (Mar. 11, 2022) (panelist)

*Developments in Discovery Reform*, George Mason Law & Economics Center Fifteenth Annual Judicial Symposium on Civil Justice Issues, Charleston, SC (Nov. 16, 2021) (panelist)

*Locality Litigation and Public Entity Incentives to File Lawsuits: Public Interest, Politics, Public Finance or Financial Gain?*, George Mason Law & Economics Center Symposium on Novel Liability Theories and the Incentives Driving Them, Nashville, TN (Oct. 25, 2021) (panelist)

*A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, University of California Hastings College of the Law, San Francisco, CA (Nov. 3, 2020)

*A Fiduciary Judge's Guide to Awarding Fees in Class Actions*, The Judicial Role in Professional Regulation, Stein Colloquium, Fordham Law School, New York, NY (Oct. 9, 2020)

*Objector Blackmail Update: What Have the 2018 Amendments Done?,* Institute for Law and Economic Policy, Fordham Law School, New York, NY (Feb. 28, 2020)

*Keynote Debate: The Conservative Case for Class Actions,* Miami Law Class Action & Complex Litigation Forum, University of Miami School of Law, Miami, FL (Jan. 24, 2020)

*The Future of Class Actions,* National Consumer Law Center Class Action Symposium, Boston, MA (Nov. 16, 2019) (panelist)

*The Conservative Case for Class Actions,* Center for Civil Justice, NYU Law School, New York, NY (Nov.11, 2019)

*Deregulation and Private Enforcement*, Class Actions, Mass Torts, and MDLs: The Next 50 Years, Pound Institute Academic Symposium, Lewis & Clark Law School, Portland, OR (Nov. 2, 2019)

*Class Actions and Accountability in Finance,* Investors and the Rule of Law Conference, Institute for Investor Protection, Loyola University Chicago Law School, Chicago, IL (Oct. 25, 2019) (panelist)

*Incentivizing Lawyers as Teams,* University of Texas at Austin Law School, Austin, TX (Oct. 22, 2019)

*"Dueling Pianos": A Debate on the Continuing Need for Class Actions,* Twenty Third Annual National Institute on Class Actions, American Bar Association, Nashville, TN (Oct. 18, 2019) (panelist)

*A Debate on the Utility of Class Actions,* Contemporary Issues in Complex Litigation Conference, Northwestern Law School, Chicago, IL (Oct.16, 2019) (panelist)

*Litigation Funding,* Forty Seventh Annual Meeting, Intellectual Property Owners Association, Washington, DC (Sep. 26, 2019) (panelist)

*The Indian Securities Fraud Class Action: Is Class Arbitration the Answer?,* International Class Actions Conference, Vanderbilt Law School, Nashville, TN (Aug. 24, 2019)

*A New Source of Class Action Data,* Corporate Accountability Conference, Institute for Law and Economic Policy, San Juan, Puerto Rico (April 12, 2019)

*The Indian Securities Fraud Class Action: Is Class Arbitration the Answer?*, Ninth Annual Emerging Markets Finance Conference, Mumbai, India (Dec. 14, 2018)

*MDL: Uniform Rules v. Best Practices*, Miami Law Class Action & Complex Litigation Forum, University of Miami Law School, Miami, FL (Dec. 7, 2018) (panelist)

*Third Party Finance of Attorneys in Traditional and Complex Litigation*, George Washington Law School, Washington, D.C. (Nov. 2, 2018) (panelist)

*MDL at 50 - The 50th Anniversary of Multidistrict Litigation*, New York University Law School, New York, New York (Oct. 10, 2018) (panelist)

*The Discovery Tax*, Law & Economics Seminar, Harvard Law School, Cambridge, Massachusetts (Sep. 11, 2018)

*Empirical Research on Class Actions,* Civil Justice Research Initiative, University of California at Berkeley, Berkeley, California (Apr. 9, 2018)

*A Political Future for Class Actions in the United States?*, The Future of Class Actions Symposium, University of Auckland Law School, Auckland, New Zealand (Mar. 15, 2018)

*The Indian Class Actions: How Effective Will They Be?*, Eighth Annual Emerging Markets Finance Conference, Mumbai, India (Dec. 19, 2017)

*Hot Topics in Class Action and MDL Litigation,* University of Miami School of Law, Miami, Florida (Dec. 8, 2017) (panelist)

*Critical Issues in Complex Litigation*, Contemporary Issues in Complex Litigation, Northwestern Law School (Nov. 29, 2017) (panelist)

*The Conservative Case for Class Actions*, Consumer Class Action Symposium, National Consumer Law Center, Washington, DC (Nov. 19, 2017)

*The Conservative Case for Class Actions—A Monumental Debate*, ABA National Institute on Class Actions, Washington, DC (Oct. 26, 2017) (panelist)

*One-Way Fee Shifting after Summary Judgment*, 2017 Meeting of the Midwestern Law and Economics Association, Marquette Law School, Milwaukee, WI (Oct. 20, 2017)

*The Conservative Case for Class Actions*, Pepperdine Law School Malibu, CA (Oct. 17, 2017)

*One-Way Fee Shifting after Summary Judgment*, Vanderbilt Law Review Symposium on The Future of Discovery, Vanderbilt Law School, Nashville, TN (Oct. 13, 2017)

*The Constitution Revision Commission and Florida's Judiciary*, 2017 Annual Florida Bar Convention, Boca Raton, FL (June 22, 2017)

*Class Actions After* Spokeo v. Robins*: Supreme Court Jurisprudence, Article III Standing, and Practical Implications for the Bench and Practitioners*, Northern District of California Judicial Conference, Napa, CA (Apr. 29, 2017) (panelist)

*The Ironic History of Rule 23*, Conference on Secrecy, Institute for Law & Economic Policy, Naples, FL (Apr. 21, 2017)

*Justice Scalia and Class Actions: A Loving Critique*, University of Notre Dame Law School, South Bend, Indiana (Feb. 3, 2017)

*Should Third-Party Litigation Financing Be Permitted in Class Actions?*, Fifty Years of Class Actions—A Global Perspective, Tel Aviv University, Tel Aviv, Israel (Jan. 4, 2017)

*Hot Topics in Class Action and MDL Litigation,* University of Miami School of Law, Miami, Florida (Dec. 2, 2016) (panelist)

*The Ideological Consequences of Judicial Selection,* William J. Brennan Lecture, Oklahoma City University School of Law, Oklahoma, City, Oklahoma (Nov. 10, 2016)

*After Fifty Years, What's Class Action's Future,* ABA National Institute on Class Actions, Las Vegas, Nevada (Oct. 20, 2016) (panelist)

*Where Will Justice Scalia Rank Among the Most Influential Justices*, State University of New York at Stony Brook, Long Island, New York (Sep. 17, 2016)

*The Ironic History of Rule 23,* University of Washington Law School, Seattle, WA (July 14, 2016)

*A Respected Judiciary—Balancing Independence and Accountability*, 2016 Annual Florida Bar Convention, Orlando, FL (June 16, 2016) (panelist)

*What Will and Should Happen to Affirmative Action After Fisher v. Texas*, American Association of Law Schools Annual Meeting, New York, NY (January 7, 2016) (panelist)

*Litigation Funding: The Basics and Beyond,* NYU Center on Civil Justice, NYU Law School, New York, NY (Nov. 20, 2015) (panelist)

*Do Class Actions Offer Meaningful Compensation to Class Members, or Do They Simply Rip Off Consumers Twice?,* ABA National Institute on Class Actions, New Orleans, LA (Oct. 22, 2015) (panelist)

*Arbitration and the End of Class Actions?,* Quinnipiac-Yale Dispute Resolution Workshop, Yale Law School, New Haven, CT (Sep. 8, 2015) (panelist)

*The Next Steps for Discovery Reform: Requester Pays*, Lawyers for Civil Justice Membership Meeting, Washington, DC (May 5, 2015)

*Private Attorney General: Good or Bad?*, 17th Annual Federalist Society Faculty Conference, Washington, DC (Jan. 3, 2015)

*Liberty, Judicial Independence, and Judicial Power*, Liberty Fund Conference, Santa Fe, NM (Nov. 13-16, 2014) (participant)

*The Economics of Objecting for All the Right Reasons,* 14th Annual Consumer Class Action Symposium, Tampa, FL (Nov. 9, 2014)

*Compensation in Consumer Class Actions: Data and Reform*, Conference on The Future of Class Action Litigation: A View from the Consumer Class, NYU Law School, New York, NY (Nov. 7, 2014)

*The Future of Federal Class Actions: Can the Promise of Rule 23 Still Be Achieved?*, Northern District of California Judicial Conference, Napa, CA (Apr. 13, 2014) (panelist)

*The End of Class Actions?*, Conference on Business Litigation and Regulatory Agency Review in the Era of Roberts Court, Institute for Law & Economic Policy, Boca Raton, FL (Apr. 4, 2014)

*Should Third-Party Litigation Financing Come to Class Actions?*, University of Missouri School of Law, Columbia, MO (Mar. 7, 2014)

*Should Third-Party Litigation Financing Come to Class Actions?*, George Mason Law School, Arlington, VA (Mar. 6, 2014)

*Should Third-Party Litigation Financing Come to Class Actions?*, Roundtable for Third-Party Funding Scholars, Washington & Lee University School of Law, Lexington, VA (Nov. 7-8, 2013)

*Is the Future of Affirmative Action Race Neutral?*, Conference on A Nation of Widening Opportunities: The Civil Rights Act at 50, University of Michigan Law School, Ann Arbor, MI (Oct. 11, 2013)

*The Mass Tort Bankruptcy: A Pre-History*, The Public Life of the Private Law: A Conference in Honor of Richard A. Nagareda, Vanderbilt Law School, Nashville, TN (Sep. 28, 2013) (panelist)

*Rights & Obligations in Alternative Litigation Financing and Fee Awards in Securities Class Actions*, Conference on the Economics of Aggregate Litigation, Institute for Law & Economic Policy, Naples, FL (Apr. 12, 2013) (panelist)

*The End of Class Actions?*, Symposium on Class Action Reform, University of Michigan Law School, Ann Arbor, MI (Mar. 16, 2013)

*Toward a More Lawyer-Centric Class Action?,* Symposium on Lawyering for Groups, Stein Center for Law & Ethics, Fordham Law School, New York, NY (Nov. 30, 2012)

*The Problem: AT & T as It Is Unfolding*, Conference on *AT & T Mobility v. Concepcion*, Cardozo Law School, New York, NY (Apr. 26, 2012) (panelist)

*Standing under the Statements and Accounts Clause,* Conference on Representation without Accountability, Fordham Law School Corporate Law Center, New York, NY (Jan. 23, 2012)

*The End of Class Actions?*, Washington University Law School, St. Louis, MO (Dec. 9, 2011)

*Book Preview Roundtable: Accelerating Democracy: Matching Social Governance to Technological Change*, Searle Center on Law, Regulation, and Economic Growth, Northwestern University School of Law, Chicago, IL (Sep. 15-16, 2011) (participant)

*Is Summary Judgment Unconstitutional? Some Thoughts About Originalism*, Stanford Law School, Palo Alto, CA (Mar. 3, 2011)

*The Constitutionality of Federal Jurisdiction-Stripping Legislation and the History of State Judicial Selection and Tenure*, Northwestern Law School, Chicago, IL (Feb. 25, 2011)

*The New Politics of Iowa Judicial Retention Elections: Examining the 2010 Campaign and Vote,* University of Iowa Law School, Iowa City, IA (Feb. 3, 2011) (panelist)

*The Constitutionality of Federal Jurisdiction-Stripping Legislation and the History of State Judicial Selection and Tenure*, Washington University Law School, St. Louis, MO (Oct. 1, 2010)

Twombly *and* Iqbal *Reconsidered,* Symposium on Business Law and Regulation in the Roberts Court, Case Western Reserve Law School, Cleveland, OH (Sep. 17, 2010)

*Do Class Action Lawyers Make Too Little?*, Institute for Law & Economic Policy, Providenciales, Turks & Caicos (Apr. 23, 2010)

*Originalism and Summary Judgment*, Georgetown Law School, Washington, DC (Apr. 5, 2010)

*Theorizing Fee Awards in Class Action Litigation*, Washington University Law School, St. Louis, MO (Dec. 11, 2009)

*An Empirical Study of Class Action Settlements and their Fee Awards*, 2009 Conference on Empirical Legal Studies, University of Southern California Law School, Los Angeles, CA (Nov. 20, 2009)

*Originalism and Summary Judgment*, Symposium on Originalism and the Jury, Ohio State Law School, Columbus, OH (Nov. 17, 2009)

*An Empirical Study of Class Action Settlements and their Fee Awards*, 2009 Meeting of the Midwestern Law and Economics Association, University of Notre Dame Law School, South Bend, IN (Oct. 10, 2009)

*The End of Objector Blackmail?*, Stanford-Yale Junior Faculty Forum, Stanford Law School, Palo Alto, CA (May 29, 2009)

*An Empirical Study of Class Action Settlements and their Fee Awards*, University of Minnesota School of Law, Minneapolis, MN (Mar. 12, 2009)

*The Politics of Merit Selection*, Symposium on State Judicial Selection and Retention Systems, University of Missouri Law School, Columbia, MO (Feb. 27, 2009)

*The End of Objector Blackmail?*, Searle Center Research Symposium on the Empirical Studies of Civil Liability, Northwestern University School of Law, Chicago, IL (Oct. 9, 2008)

*Alternatives To Affirmative Action After The Michigan Civil Rights Initiative*, University of Michigan School of Law, Ann Arbor, MI (Apr. 3, 2007) (panelist)


**OTHER PUBLICATIONS**

*Memo to Mitch: Repeal the Republican Tax Increase*, THE HILL (July 17, 2020)

*The Right Way to End Qualified Immunity*, THE HILL (June 25, 2020)

*I Still Remember*, 133 HARV. L. REV. 2458 (2020)

*Proposed Reforms to Texas Judicial Selection*, 24 TEX. R. L. & POL. 307 (2020)

*The Conservative Case for Class Actions?,* NATIONAL REVIEW (Nov. 13, 2019)

*9th Circuit Split: What's the math say?*, DAILY JOURNAL (Mar. 21, 2017)

*Former clerk on Justice Antonin Scalia and his impact on the Supreme Court*, THE CONVERSATION (Feb. 24, 2016)

*Lessons from Tennessee Supreme Court Retention Election*, THE TENNESSEAN (Aug. 20, 2014)

*Public Needs Voice in Judicial Process*, THE TENNESSEAN (June 28, 2013)

*Did the Supreme Court Just Kill the Class Action?*, THE QUARTERLY JOURNAL (April 2012)

*Let General Assembly Confirm Judicial Selections*, CHATTANOOGA TIMES FREE PRESS (Feb. 19, 2012)

*"Tennessee Plan" Needs Revisions*, THE TENNESSEAN (Feb. 3, 2012)

*How Does Your State Select Its Judges?*, INSIDE ALEC 9 (March 2011) (with Stephen Ware)

*On the Merits of Merit Selection*, THE ADVOCATE 67 (Winter 2010)

*Supreme Court Case Could End Class Action Suits,* SAN FRANCISCO CHRONICLE (Nov. 7, 2010)

*Kagan is an Intellect Capable of Serving Court*, THE TENNESSEAN (Jun. 13, 2010)

*Confirmation "Kabuki" Does No Justice*, POLITICO (July 20, 2009)

*Selection by Governor may be Best Judicial Option*, THE TENNESSEAN (Apr. 27, 2009)

*Verdict on Tennessee Plan May Require a Jury*, THE MEMPHIS COMMERCIAL APPEAL (Apr. 16, 2008)

*Tennessee's Plan to Appoint Judges Takes Power Away from the Public*, THE TENNESSEAN (Mar. 14, 2008)

*Process of Picking Judges Broken*, CHATTANOOGA TIMES FREE PRESS (Feb. 27, 2008)

*Disorder in the Court*, LOS ANGELES TIMES (Jul. 11, 2007)

*Scalia's Mistake*, NATIONAL LAW JOURNAL (Apr. 24, 2006)

*GM Backs Its Bottom Line*, DETROIT FREE PRESS (Mar. 19, 2003)

*Good for GM, Bad for Racial Fairness*, LOS ANGELES TIMES (Mar. 18, 2003)

*10 Percent Fraud*, WASHINGTON TIMES (Nov. 15, 2002)

**OTHER PRESENTATIONS**

*Abstention*, Tennessee Attorney General's Office Continuing Legal Education, Nashville, TN (Apr. 13, 2022)

*Does the Way We Choose our Judges Affect Case Outcomes?*, American Legislative Exchange Council 2018 Annual Meeting, New Orleans, Louisiana (August 10, 2018) (panelist)

*Oversight of the Structure of the Federal Courts*, Subcommittee on Oversight, Agency Action, Federal Rights and Federal Courts, United States Senate, Washington, D.C. (July 31, 2018)

*Where Will Justice Scalia Rank Among the Most Influential Justices*, The Leo Bearman, Sr. American Inn of Court, Memphis, TN (Mar. 21, 2017)

*Bringing Justice Closer to the People: Examining Ideas for Restructuring the 9th Circuit*, Subcommittee on Courts, Intellectual Property, and the Internet, United States House of Representatives, Washington, D.C. (Mar. 16, 2017)

*Supreme Court Review 2016: Current Issues and Cases Update*, Nashville Bar Association, Nashville, TN (Sep. 15, 2016) (panelist)

*A Respected Judiciary—Balancing Independence and Accountability*, Florida Bar Annual Convention, Orlando, FL (June 16, 2016) (panelist)

*Future Amendments in the Pipeline: Rule 23*, Tennessee Bar Association, Nashville, TN (Dec. 2, 2015)

*The New Business of Law: Attorney Outsourcing, Legal Service Companies, and Commercial Litigation Funding*, Tennessee Bar Association, Nashville, TN (Nov. 12, 2014)

*Hedge Funds + Lawsuits = A Good Idea?*, Vanderbilt University Alumni Association, Washington, DC (Sep. 3, 2014)

*Judicial Selection in Historical and National Perspective*, Committee on the Judiciary, Kansas Senate (Jan. 16, 2013)

*The Practice that Never Sleeps: What's Happened to, and What's Next for, Class Actions*, ABA Annual Meeting, Chicago, IL (Aug. 3, 2012) (panelist)

*Life as a Supreme Court Law Clerk and Views on the Health Care Debate*, Exchange Club, Nashville, TN (Apr. 3, 2012)

*The Tennessee Judicial Selection Process—Shaping Our Future*, Tennessee Bar Association Leadership Law Retreat, Dickson, TN (Feb. 3, 2012) (panelist)

*Reexamining the Class Action Practice*, ABA National Institute on Class Actions, New York, NY (Oct. 14, 2011) (panelist)

*Judicial Selection in Kansas*, Committee on the Judiciary, Kansas House of Representatives (Feb. 16, 2011)

*Judicial Selection and the Tennessee Constitution*, Civil Practice and Procedure Subcommittee, Tennessee House of Representatives (Mar. 24, 2009)

*What Would Happen if the Judicial Selection and Evaluation Commissions Sunset?*, Civil Practice and Procedure Subcommittee, Tennessee House of Representatives (Feb. 24, 2009)

*Judicial Selection in Tennessee*, Chattanooga Bar Association, Chattanooga, TN (Feb. 27, 2008) (panelist)

*Ethical Implications of Tennessee's Judicial Selection Process*, Tennessee Bar Association, Nashville, TN (Dec. 12, 2007)

## PROFESSIONAL ASSOCIATIONS

Member, American Law Institute
Referee, Journal of Legal Studies
Referee, Journal of Law, Economics and Organization
Referee, Journal of Empirical Legal Studies
Referee, Supreme Court Economic Review
Reviewer, Aspen Publishing
Reviewer, Cambridge University Press
Reviewer, University Press of Kansas
Reviewer, Palgrave Macmillan
Reviewer, Oxford University Press
Reviewer, Supreme Court Economic Review
Member, American Bar Association
Member, Tennessee Advisory Committee to the U.S. Commission on Civil Rights, 2009-2015
Board of Directors, Tennessee Stonewall Bar Association, 2012-2022
American Swiss Foundation Young Leaders' Conference, 2012
Bar Admission, District of Columbia & California (inactive)

## COMMUNITY ACTIVITIES

Board of Directors, Beacon Center, 2018-present; Board of Directors, Nashville Ballet, 2011-2017 & 2019-2022; Nashville Talking Library for the Blind, 2008-2009

# EXHIBIT 2

Documents reviewed:

- Plaintiffs' Class Action Complaint in *Wayside Church v. Van Buren County* (ECF No. 1, 12/11/14)

- Second Amended Complaint in *Grainger v. County of Ottawa* (ECF No. 14, 9/20/19)

- Plaintiff's Motion to Consolidate Cases and for Appointment of Interim Lead Counsel in *Wayside Church v. Van Buren County* (ECF No. 72, 11/21/19)

- Frederick Grainer Jr.'s Proposed Opposition to the Wayside Plaintiffs' "Plaintiffs' Motion to Consolidate Cases and for Appointment of Interim Co-Lead Counsel" in *Wayside Church v. Van Buren County* (ECF No. 78, filed 12/5/19)

- Plaintiffs' First Amended Class Action Complaint in *Wayside Church v. Van Buren County* (ECF No. 88, 3/30/20)

- Order (denying consolidation) in *Wayside Church v. Van Buren County* (ECF No. 102, 10/20/20)

- Plaintiff's Motion for Class Certification and Appointment of Co-Lead Class Counsel and Class Representative in *Grainger v. Ottawa* (ECF No. 101, 12/17/20)

- Brief in Support of Motion for Class Certification and Appointment of Class Representatives and Co-Lead Counsel in *Wayside Church v. Van Buren County* (ECF No. 115, 12/24/20)

- Complaint in *Calkins v. Kent County* (ECF No. 1, 1/20/21)

- Frederick Grainger, Jr.'s Proposed Opposition to the Wayside Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Co-Lead Counsel in *Wayside Church v. Van Buren County* (ECF No. 128-2, 1/29/21)

- Mindy Calkins Ali Al-Faraj, and Kerry Mark Properties, LLC, Plaintiffs in Calkins, et al. vs. Kent County, et al., Case No. 21-cv-62, Brief in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Co-Lead Counsel and Limited Appearance in *Wayside Church v. Van Buren County* (ECF No. 131-1, 1/30/21)

- Opinion and Order (denying class certification) in *Grainger v. Ottawa* (ECF No. 127, filed 3/2/21)

- Corrected Putative Class Member Brian Behovitz's Motion to Intervene, File His Supplemental Pleading, and to Certify the Class, Appoint Him as Class Representative, and Appoint Class Counsel, and Request for Oral Argument in *Grainger v. Ottawa* (ECF No. 133, 3/5/21)

- Settlement Agreement as to Oakland County in *Bowles v. County of Wayne* (ECF 61-2, 7/26/22)

- Plaintiff and Proposed Intervenor's Emergency Motion for Order to Show Cause and Other Relief in *Grainger v. Ottawa* (ECF 182, 7/27/21)

- Order Denying Emergency Motions in *Grainger v. Ottawa* (ECF 189, 7/29/21)

- Joint Motion for Indicative Ruling in *Wayside Church v. Van Buren County* (ECF No. 163, 10/7/22)

- Proposed Intervenor Brian Behovitz's Response to Motion for Indicative Ruling, ECF 163 (draft)

- Order Granting Motion for Indicative Ruling in *Wayside Church v. Van Buren County* (ECF 164, 10/12/22)

- Settlement Term Sheet re: Class Objections in *Bowles v. County of Wayne* (ECF No. 98-1, 11/17/22)

- Motion of Numerous Parties for Leave to Intervene and Address Supposed Amendment of Complaint and Related Settlement Agreement (ECF No. 166, 12/13/22)

- Brief in Support of Motion of Brian Behovitz, Proposed Intervenor in Matter of Grainger v. County of Ottawa, No. 19-CV-501 (W.D. Mich.) for Leave to Intervene to File a Brief in Opposition to the Motions to Amend and for Preliminary Approval in *Wayside Church v. Van Buren County* (ECF No. 171, 12/13/22)

- Intervenor Brian Behovitz's Response in Opposition to the Motion for Preliminary Approval in *Wayside Church v. Van Buren County* (draft)

- State of Michigan's Application for Leave to Appeal in *Hathon v. Michigan* (Mich. S.Ct., 1/12/23)

- The *Hathon* Certified Class's Answer to the State of Michigan's Application for Leave to Appeal in *Hathon v. Michigan* (Mich. S. Ct., 3/3/23)

- Online firm resumes of The Miller Law Firm, Visser & Associates, Outside Legal Counsel (3/13/23)

- Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement in *Wayside Church v. County of Van Buren* (ECF No. 219, 3/14/23)

- Declaration of Jeanne C. Finegan, APR in Connection with Preliminary Approval in *Wayside Church v. County of Van Buren* (ECF No. 221, 3/14/23)

- Declaration of David H. Fink in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement in *Wayside Church v. County of Van Buren* (ECF No. 222, 3/14/23)

- Declaration of Owen D. Ramey in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement in *Wayside Church v. County of Van Buren* (ECF No. 223, 3/14/23)

- Declaration of James Shek in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement in *Wayside Church v. County of Van Buren* (ECF No. 224, 3/14/23)



**General Docket**
**United States Court of Appeals for the Sixth Circuit**

---

**Court of Appeals Docket #:** 21-1272                                                    **Docketed:** 03/18/2021
**Nature of Suit:** 3950 Constitutional - State Statute
Wayside Church, et al v. Van Buren County, MI
**Appeal From:** Western District of Michigan at Grand Rapids
**Fee Status:** fee paid

---

**Case Type Information:**
    **1)** Civil
    **2)** Private
    **3)** Federal Question

---

**Originating Court Information:**
    **District:** 0646-1 : 1:14-cv-01274
    **Court Reporter:** Kathleen Sue Thomas
    **Trial Judge:** Paul Lewis Maloney, U.S. District Judge
    **Date Filed:** 12/11/2014
    **Date Order/Judgment:**                                             **Date NOA Filed:**
    02/16/2021                                                             03/17/2021

---

**Prior Cases:**
  15-2463    **Date Filed:** 11/30/2015    **Date Disposed:** 02/10/2017    **Disposition:** Oral Argument
  15-2525    **Date Filed:** 12/10/2015    **Date Disposed:** 02/10/2017    **Disposition:** Oral Argument

**Current Cases:**
  None

---

| | |
|---|---|
| WAYSIDE CHURCH, an Illinois Not-For-Profit (Ecclesiastical) Corporation, individually and on behalf of a class of all others similarly situated<br>        Plaintiff - Appellee | David H. Fink<br>Direct: 248-971-2500<br>[COR LD NTC Retained]<br>Fink Bressack<br>38500 Woodward Avenue<br>Suite 350<br>Bloomfield Hills, MI 48304<br><br>Nathan Joshua Fink<br>Direct: 248-971-2500<br>[COR NTC Retained]<br>Fink Bressack<br>38500 Woodward Avenue<br>Suite 350<br>Bloomfield Hills, MI 48304 |
| MYRON W. STAHL, individually and on behalf of a class of all others similarly situated<br>        Plaintiff - Appellee | David H. Fink<br>Direct: 248-971-2500<br>[COR LD NTC Retained]<br>(see above)<br><br>Nathan Joshua Fink<br>Direct: 248-971-2500<br>[COR NTC Retained]<br>(see above) |
| HENDERSON HODGENS, individually and on behalf of a class of all others similarly situated<br>        Plaintiff - Appellee | David H. Fink<br>Direct: 248-971-2500<br>[COR LD NTC Retained]<br>(see above)<br><br>Nathan Joshua Fink<br>Direct: 248-971-2500<br>[COR NTC Retained]<br>(see above) |
| v. | |

EXHIBIT
B
OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

VAN BUREN COUNTY, MI, in its individual Michigan municipal
capacity and on behalf of a class of all other Michigan counties
similarly situated
            Defendant - Appellant

Theodore W. Seitz
[COR LD NTC Retained]
Dykema
Firm: 517-374-9100
201 Townsend Street
Suite 900
Lansing, MI 48933

KAREN MAKAY, in her individual official capacity as Treasures of
Van Buren County and on behalf of a class of all other Treasurers
of Michigan Counties similarly situated
**Terminated:** 04/02/2021
            Defendant - Appellant

WAYSIDE CHURCH, an Illinois Not-For-Profit (Ecclesiastical) Corporation, individually and on behalf of a class of all others similarly situated; MYRON W. STAHL, individually and on behalf of a class of all others similarly situated; HENDERSON HODGENS, individually and on behalf of a class of all others similarly situated

       Plaintiffs - Appellees

v.

VAN BUREN COUNTY, MI, in its individual Michigan municipal capacity and on behalf of a class of all other Michigan counties similarly situated

       Defendant - Appellant

| 03/18/2021 | ☐ 1<br>3 pg, 93.38 KB | Civil Case Docketed. Notice filed by Appellants Karen Makay and Van Buren County. Transcript needed: y. (JAC) [Entered: 03/18/2021 03:45 PM] |
|---|---|---|
| 03/18/2021 | ☐ 2 | The case manager for this case is: Julie A. Connor (JAC) [Entered: 03/18/2021 03:48 PM] |
| 03/19/2021 | ☐ 3 | Mediation Office is involved in this appeal. (LMR) [Entered: 03/19/2021 02:14 PM] |
| 03/19/2021 | ☐ 4<br>2 pg, 118.1 KB | **MEDIATOR-INITIATED CALL:** A Telephone Mediation conference has been scheduled for 04/13/2021 at 9:30 AM (ET) with Paul Calico. [Please open notice for important details and deadlines.] (LMR) [Entered: 03/19/2021 02:16 PM] |
| 03/24/2021 | ☐ 5<br>1 pg, 100.31 KB | APPEARANCE filed for Appellees Henderson Hodgens, Myron W. Stahl and Wayside Church by David H. Fink. Certificate of Service: 03/24/2021. [21-1272] (DHF) [Entered: 03/24/2021 04:27 PM] |
| 03/24/2021 | ☐ 6<br>1 pg, 100.59 KB | APPEARANCE filed for Appellees Henderson Hodgens, Myron W. Stahl and Wayside Church by Nathan J. Fink. Certificate of Service: 03/24/2021. [21-1272] (NJF) [Entered: 03/24/2021 04:28 PM] |
| 03/25/2021 | ☐ 7<br>1 pg, 49.58 KB | **MEDIATOR-INITIATED CALL:** The Telephone Mediation conference has been rescheduled for 04/15/2021 at 9:30 am EASTERN TIME with Paul Calico. [Please open notice for important details and deadlines.] (CAW) [Entered: 03/25/2021 01:48 PM] |
| 04/01/2021 | ☐ 8<br>1 pg, 190.14 KB | APPEARANCE filed for Appellant Van Buren County, MI by Theodore W. Seitz. Certificate of Service: 04/01/2021. [21-1272] (TWS) [Entered: 04/01/2021 02:36 PM] |
| 04/01/2021 | ☐ 9<br>2 pg, 127.62 KB | CORPORATE DISCLOSURE STATEMENT filed by Attorney Mr. Theodore W. Seitz for Appellant Van Buren County, MI Certificate of Service: 04/01/2021. [21-1272]--Edited 04/02/2021 by JAC to remove Karen Makay] (TWS) [Entered: 04/01/2021 03:50 PM] |
| 04/01/2021 | ☐ 10<br>1 pg, 96.12 KB | CIVIL APPEAL STATEMENT OF PARTIES AND ISSUES filed by Attorney Mr. Theodore W. Seitz for Appellant Van Buren County, MI.. Certificate of Service: 04/01/2021. [21-1272]--Edited 04/02/2021 by JAC to remove Karen Makay] (TWS) [Entered: 04/01/2021 04:11 PM] |
| 04/01/2021 | ☐ 11<br>2 pg, 49.53 KB | CORPORATE DISCLOSURE STATEMENT filed by Attorney Mr. David H. Fink for Appellee Wayside Church Certificate of Service: 04/01/2021. [21-1272]--Edited 04/02/2021 by JAC to remove Henderson Hodgens and Myron W. Stahl] (DHF) [Entered: 04/01/2021 05:30 PM] |
| 04/02/2021 | ☐ 12<br>2 pg, 194.94 KB | LETTER SENT to all counsel advising of change of caption. (JAC) [Entered: 04/02/2021 10:25 AM] |
| 04/05/2021 | ☐ 13 | NOTICE: The initial transcript order has not been completed. If not completed by 04/06/2021 further action will be taken. (JAC) [Entered: 04/05/2021 09:08 AM] |
| 04/05/2021 | ☐ 14 | TRANSCRIPT ORDER filed - no hearings held in District Court. Filed by Mr. Theodore W. Seitz for Van Buren County, MI. Certificate of Service: 04/05/2021. [21-1272] (TWS) [Entered: 04/05/2021 09:54 AM] |
| 04/05/2021 | ☐ 15<br>2 pg, 57.75 KB | CORPORATE DISCLOSURE STATEMENT filed by Attorney Mr. David H. Fink for Appellees Henderson Hodgens, Myron W. Stahl and Wayside Church Certificate of Service: 04/05/2021. [21-1272] (DHF) [Entered: 04/05/2021 11:52 AM] |
| 04/05/2021 | ☐ 16<br>5 pg, 147.87 KB | BRIEFING LETTER SENT setting briefing schedule: appellant brief due 05/17/2021; appellee brief due 06/16/2021. (JAC) [Entered: 04/05/2021 02:56 PM] |
| 04/15/2021 | ☐ 17<br>1 pg, 49.61 KB | **MEDIATOR-INITIATED CALL:** A Follow-up Telephone Mediation conference has been scheduled for 05/03/2021 at 10:00 AM (ET) with Paul Calico. [Please open notice for important details.] (LMR) [Entered: 04/15/2021 11:34 AM] |
| 05/03/2021 | ☐ 18<br>1 pg, 49.6 KB | **MEDIATOR-INITIATED CALL:** A Follow-up Telephone Mediation conference has been scheduled for 05/19/2021 at 9:30 AM (ET) with Paul Calico. [Please open notice for important details.] (LMR) [Entered: 05/03/2021 02:05 PM] |
| 05/03/2021 | ☐ 19<br>1 pg, 150.28 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 06/18/2021. appellee brief now due 07/19/2021. (LMR) [Entered: 05/03/2021 02:06 PM] |
| 05/19/2021 | ☐ 20<br>1 pg, 49.6 KB | **MEDIATOR-INITIATED CALL:** A Follow-up Telephone Mediation conference has been scheduled for 06/10/2021 at 2:00 PM (ET) with Paul Calico. [Please open notice for important details.] (LMR) [Entered: 05/19/2021 12:26 PM] |
| 05/19/2021 | ☐ 21<br>1 pg, 150.24 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 07/20/2021. appellee brief now due 08/20/2021. (LMR) [Entered: 05/19/2021 12:27 PM] |
| 06/11/2021 | ☐ 22<br>1 pg, 150.05 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 08/13/2021. appellee brief now due 09/13/2021. (LMR) [Entered: 06/11/2021 11:25 AM] |
| 06/11/2021 | ☐ 23 | REGARDING MEDIATION: **SCOTT COBURN will now be the Mediator for this appeal.** (LMR) [Entered: 06/11/2021 11:39 AM] |

| | | |
|---|---|---|
| 06/22/2021 | ☐ **24**<br>1 pg, 50.06 KB | **IN-PERSON CONFERENCE:** An In-Person Follow up Telephone Mediation Conference has been scheduled for 07/13/2021 at 10:00 AM (ET) with Scott Coburn. [Please open notice for important details and deadlines.]--[Edited 07/07/2021 by LMR] (MLB) [Entered: 06/22/2021 12:26 PM] |
| 07/20/2021 | ☐ **25**<br>1 pg, 150.5 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 10/01/2021. appellee brief now due 11/01/2021. (LMR) [Entered: 07/20/2021 04:13 PM] |
| 08/06/2021 | ☐ **26**<br>1 pg, 51.5 KB | **VIDEO CONFERENCE:** A Follow-up Mediation conference has been scheduled for 09/01/2021 at 10:00 AM (ET) with Scott Coburn. [Please open notice for important details.] (LMR) [Entered: 08/06/2021 10:37 AM] |
| 09/28/2021 | ☐ **27**<br>1 pg, 151.39 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 11/01/2021. appellee brief now due 12/02/2021. (LMR) [Entered: 09/28/2021 10:26 AM] |
| 10/29/2021 | ☐ **28**<br>2 pg, 161.21 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 11/15/2021. appellee brief now due 12/16/2021. (LMR) [Entered: 10/29/2021 05:20 PM] |
| 11/16/2021 | ☐ **29**<br>2 pg, 160.69 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 12/15/2021. appellee brief now due 01/18/2022. (LMR) [Entered: 11/16/2021 07:56 AM] |
| 12/14/2021 | ☐ **30**<br>2 pg, 160.69 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 01/18/2022. appellee brief now due 02/22/2022. (MLB) [Entered: 12/14/2021 10:15 AM] |
| 01/18/2022 | ☐ **31**<br>2 pg, 160.75 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 02/17/2022. appellee brief now due 03/24/2022. (LMR) [Entered: 01/18/2022 11:00 AM] |
| 02/15/2022 | ☐ **32**<br>2 pg, 160.78 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 03/22/2022. appellee brief now due 04/26/2022. (LMR) [Entered: 02/15/2022 05:09 PM] |
| 03/21/2022 | ☐ **33**<br>2 pg, 160.73 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 04/22/2022. appellee brief now due 05/27/2022. (MLB) [Entered: 03/21/2022 12:23 PM] |
| 04/13/2022 | ☐ **34**<br>2 pg, 161 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 05/23/2022. appellee brief now due 06/27/2022. (LMR) [Entered: 04/13/2022 03:57 PM] |
| 05/11/2022 | ☐ **35**<br>2 pg, 160.68 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 06/22/2022. appellee brief now due 07/27/2022. (LMR) [Entered: 05/11/2022 03:22 PM] |
| 06/16/2022 | ☐ **36**<br>2 pg, 161.04 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 07/22/2022. appellee brief now due 08/26/2022. (LMR) [Entered: 06/16/2022 03:49 PM] |
| 07/15/2022 | ☐ **37**<br>2 pg, 161.26 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 08/22/2022. appellee brief now due 09/26/2022. (LMR) [Entered: 07/15/2022 03:43 PM] |
| 08/10/2022 | ☐ **38**<br>2 pg, 161.23 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 09/21/2022. appellee brief now due 10/26/2022. (LMR) [Entered: 08/10/2022 04:13 PM] |
| 09/12/2022 | ☐ **39**<br>2 pg, 161.34 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 10/21/2022. appellee brief now due 11/28/2022. (LMR) [Entered: 09/12/2022 03:24 PM] |
| 09/27/2022 | ☐ **40**<br>2 pg, 161.33 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 11/21/2022. appellee brief now due 12/29/2022. (LMR) [Entered: 09/27/2022 03:59 PM] |
| 11/15/2022 | ☐ **41**<br>2 pg, 161.16 KB | BRIEFING LETTER SENT by Mediation Office, resetting briefing schedule: appellant brief now due 12/21/2022. appellee brief now due 01/30/2023. (LMR) [Entered: 11/15/2022 01:01 PM] |
| 12/05/2022 | ☐ **42**<br>3 pg, 7.38 KB | JOINT MOTION filed by Mr. Theodore W. Seitz for Van Buren County, MI and Mr. Nathan J. Fink for Henderson Hodgens, Myron W. Stahl and Wayside Church to remand. Certificate of Service: 12/05/2022. [21-1272]--[Edited 12/08/2022 by JAC] (TWS) [Entered: 12/05/2022 01:50 PM] |
| 12/09/2022 | ☐ **43**<br>1 pg, 68.81 KB | ORDER filed: IT IS ORDERED that the motion [42] shall be, and it hereby is GRANTED. The appeal is remanded to the District Court for further proceedings. The parties shall notify this Court within 28 days following the District Court's decision and the effect of such decision on disposition of the appeal. (JAC) [Entered: 12/09/2022 10:11 AM] |
| 12/29/2022 | ☐ 44 | The case manager for this case is now: Charles Anthony Milton (JEC) [Entered: 12/29/2022 08:38 AM] |

Clear All

⦿ **Documents and Docket Summary**
○ **Documents Only**

☑ **Include Page Numbers**

**Selected Pages:** 0          **Selected Size:** 0 KB

View Selected

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/29/2023 11:46:46 | | | |
| **PACER Login:** | olcplc48626 | **Client Code:** | |
| **Description:** | Docket Report (filtered) | **Search Criteria:** | 21-1272 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |



**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WAYSIDE CHURCH, et al.,                      )
                                             )
                     Plaintiffs,             )
                                             )
v.                                           )        Case No. 1:14-cv-01274-PLM
                                             )
VAN BUREN COUNTY, et al.,                    )        Hon. Paul L. Maloney
                                             )
                                             )
                     Defendants.             )
_____     )

**ORDER PRELIMINARILY APPROVING SETTLEMENT,  CONDITIONALLY**
**CERTIFYING CLASS FOR SETTLEMENT PURPOSES,  APPROVING FORM AND**
**MANNER OF CLASS NOTICE, AND**
**SETTING DATE FOR FINAL APPROVAL HEARING**

Plaintiffs, on behalf of themselves and the proposed Settlement Class and Sub-Classes, seek preliminary approval of the Settlement Agreement in its entirety and approval of the notice procedure, including without limitation conditional certification of the proposed Settlement Class and Settlement Sub-Classes, the proposed Notice (Exhibit 2 to Plaintiffs' Motion for Preliminary Approval), the proposed Claim Form (Exhibit 3 to Plaintiffs' Motion for Preliminary Approval), and all of the requirements for potential Class Members to either opt-out or object.

This Court, having reviewed the pleadings in the case and the submissions of the parties with respect to preliminary approval of the proposed Settlement Agreement, and for good cause shown;

IT IS HEREBY ORDERED, this __24th__ day of ___March___, 2023, that pursuant to Federal Rule of Civil Procedure 23(e):

1.      This Order incorporates by reference the definitions in the Settlement Agreement (a copy of which is attached to as Exhibit 1 to Plaintiffs' Motion for Preliminary Approval), and all capitalized terms used in this Order will have the same meanings as set forth in the Settlement Agreement, unless otherwise defined in this Order.

2.      The Settlement Agreement, together with its attached exhibits and/or referenced documents, sets forth the terms and conditions for the proposed settlement and dismissal with prejudice of the Action.  The Settlement Agreement was the result of an extensive, arm's length negotiation conducted under the guidance of and with assistance from the Sixth Circuit Mediation Office over a period of almost two years.

3.      The Court will direct notice to the Settlement Class and Settlement Sub-Classes because giving notice is justified by Plaintiffs' showing that the Court will likely be able to approve the Settlement Agreement under Rule 23(e)(2) and certify the class for purposes of judgment on the proposed Settlement Agreement. Specifically, the Settlement Agreement preliminarily appears to be (a) fair, reasonable, and adequate considering the relevant factual, legal, practical, and procedural considerations of the Action, (b) free of collusion to the detriment of putative Class Members, and (c) within the range of possible final judicial approval, subject to further consideration thereof at the Final Approval Hearing as described below.  The Settlement Class and Settlement Sub-Classes appear likely to satisfy the prerequisites of Rule 23(a) and Rule 23(b)(3). Accordingly, the Settlement Agreement and the settlement are sufficient to warrant notice thereof and a full hearing on the settlement.

4.      If, for any reason, the Settlement Agreement is not finally approved or does not become effective, this Order, including but not limited to the conditional Settlement Class and Settlement Sub-Classes certification, shall be null and void and automatically deemed vacated.

Neither the Settlement Agreement nor anything related to the negotiation, consideration, or approval of it shall be used, referred to, proffered, or admissible for any purpose in this Action or any other action or proceeding.  In such event, the parties and the putative Class Members shall be returned to the same litigation position that they were in prior to seeking preliminary approval of the Settlement Agreement, and they shall be free to raise all claims, defenses, and arguments as they would have been able to had they never negotiated or sought approval of the Settlement, including opposing class certification on any and all grounds (including but not limited to Rule 23(a) and (b)(3)).  The parties must also promptly schedule a status conference to establish a new scheduling order for the continuation of the Action.

5.     Solely for the purpose of settlement in accordance with the Settlement Agreement, and pursuant to Rule 23(a) and (b)(3), this Court hereby conditionally certifies the following class (the "Settlement Class"):

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by a County and which was sold during the Class Period by that County.

As the Settlement Agreement explains, "Eligible Property" means a parcel of real property foreclosed by a County for the non-payment of real-property taxes, and which was sold during the Class Period by a County for an amount in excess of the Minimum Sale Price. And the Class Period refers to the time for each County during which that County acted as a foreclosing governmental unit, beginning no earlier than January 1, 2013 and ending on December 31, 2020, inclusive.

6.     In addition, solely for the purpose of settlement in accordance with the Settlement Agreement, and pursuant to Rule 23(a) and (b)(3), this Court hereby conditionally certifies Settlement Sub-Classes as to each County, with a sub-class definition tied to each County, as described below:

(i)      *Alger County*:  The Alger County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Alger County and which was sold during the Class Period by Alger County.

(ii)      *Allegan County*:  The Allegan County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Allegan County and which was sold during the Class Period by Allegan County.

(iii)      *Antrim County*:  The Antrim County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Antrim County and which was sold during the Class Period by Antrim County.

(iv)      *Baraga County*:  The Baraga County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Baraga County and which was sold during the Class Period by Baraga County.

(v)      *Barry County*:  The Barry County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Barry County and which was sold during the Class Period by Barry County.

(vi)      *Benzie County*:  The Benzie County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Benzie County and which was sold during the Class Period by Benzie County.

(vii)      *Berrien County*: The Berrien County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Berrien County and which was sold during the Class Period by Berrien County.

(viii)     *Calhoun County*:  The Calhoun County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Calhoun County and which was sold during the Class Period by Calhoun County.

(ix)     *Cass County*:  The Cass County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Cass County and which was sold during the Class Period by Cass County.

(x)     *Chippewa County*:  The Chippewa County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Chippewa County and which was sold during the Class Period by Chippewa County.

(xi)     *Delta County*:  The Delta County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Delta County and which was sold during the Class Period by Delta County.

(xii)     *Dickinson County*: The Dickinson County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Dickinson County and which was sold during the Class Period by Dickinson County.

(xiii)     *Eaton County*:  The Eaton County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Eaton County and which was sold during the Class Period by Eaton County.

(xiv)      *Emmet County*:  The Emmet County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Emmet County and which was sold during the Class Period by Emmet County.

(xv)      *Gogebic County*:  The Gogebic County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Gogebic County and which was sold during the Class Period by Gogebic County.

(xvi)      *Grand Traverse County*:  The Grand Traverse County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Grand Traverse County and which was sold during the Class Period by Grand Traverse County.

(xvii)      *Hillsdale County*:  The Hillsdale County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Hillsdale County and which was sold during the Class Period by Hillsdale County.

(xviii)      *Houghton County*:  The Houghton County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Houghton County and which was sold during the Class Period by Houghton County.

(xix)      *Ingham County*:  The Ingham County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Ingham County and which was sold during the Class Period by Ingham County.

(xx)     *Ionia County*:  The Ionia County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Ionia County and which was sold during the Class Period by Ionia County.

(xxi)     *Iron County*:  The Iron County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Iron County and which was sold during the Class Period by Iron County.

(xxii)     *Kalamazoo County*:  The Kalamazoo County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Kalamazoo County and which was sold during the Class Period by Kalamazoo County.

(xxiii)     *Kalkaska County*: The Kalkaska County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Kalkaska County and which was sold during the Class Period by Kalkaska County.

(xxiv)     *Kent County*:  The Kent County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Kent County and which was sold during the Class Period by Kent County.

(xxv)     *Lake County*:  The Lake County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Lake County and which was sold during the Class Period by Lake County.

(xxvi)     *Leelanau County*:  The Leelanau County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Leelanau County and which was sold during the Class Period by Leelanau County.

(xxvii)     *Mackinac County*:  The Mackinac County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Mackinac County and which was sold during the Class Period by Mackinac County.

(xxviii)     *Manistee County*: The Manistee County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Manistee County and which was sold during the Class Period by Manistee County.

(xxix)     *Marquette County*:  The Marquette County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Marquette County and which was sold during the Class Period by Marquette County.

(xxx)     *Mason County*:  The Mason County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Mason County and which was sold during the Class Period by Mason County.

(xxxi)     *Menominee County*:  The Menominee County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Menominee County and which was sold during the Class Period by Menominee County.

(xxxii)     *Missaukee County*:  The Missaukee County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Missaukee County and which was sold during the Class Period by Missaukee County.

(xxxiii)     *Montcalm County*: The Montcalm County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Montcalm County and which was sold during the Class Period by Montcalm County.

(xxxiv)     *Muskegon County*: The Muskegon County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Muskegon County and which was sold during the Class Period by Muskegon County.

(xxxv)     *Newaygo County*:  The Newaygo County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Newaygo County and which was sold during the Class Period by Newaygo County.

(xxxvi)     *Oceana County*:  The Oceana County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Oceana County and which was sold during the Class Period by Oceana County.

(xxxvii)     *Ontonagon County*: The Ontonagon County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Ontonagon County and which was sold during the Class Period by Ontonagon County.

(xxxviii)   *Osceola County*:  The Osceola County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Osceola County and which was sold during the Class Period by Osceola County.

(xxxix)   *Ottawa County*:  The Ottawa County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Ottawa County and which was sold during the Class Period by Ottawa County.

(xl)   *Saint Joseph County*:  The St. Joseph County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Saint Joseph County and which was sold during the Class Period by Saint Joseph County.

(xli)   *Schoolcraft County*: The Schoolcraft County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Schoolcraft County and which was sold during the Class Period by Schoolcraft County.

(xlii)   *Van Buren County*:  The Van Buren County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Van Buren County and which was sold during the Class Period by Van Buren County.

(xliii)   *Wexford County*:  The Wexford County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Wexford County and which was sold during the Class Period by Wexford County.

7.      Consistent with the Settlement Agreement, the following are excluded from the

Settlement Class and each Settlement Sub-Class:

        (i)       All governmental units and entities of any type whatsoever including, but not limited to, U.S. Department of Treasury, the Internal Revenue Service, the State of Michigan, and the Michigan Department of Treasury, albeit this provision does not apply to county public administrators appointed in accordance with Mich. Comp. Laws § 720.202 and who are pursuing claims on behalf of a deceased Eligible Claimant's estate;

        (ii)      All former holders of an interest in an Eligible Property as to which any Eligible Claimant has submitted a request to be excluded that is accepted by the Court and which is not timely revoked;

        (iii)     All Potential Claimants who have released their claim for Surplus Proceeds against a County;

        (iv)      All former holders of an interest in an Eligible Property by reason of a lien to secure payment of a debt or judgment which debt or judgment has since been satisfied or released;

        (v)      All Potential Claimants who have already resolved their claim for Surplus Proceeds against a County through a settlement agreement or a final judicial judgment as to which there is no appeal pending and/or the time to appeal has expired; and

        (vi)      As to Cass County only, any former holders of an interest in an Eligible Property who assert any claims for surplus proceeds that are greater than $300,000.

8.      The Court preliminarily appoints Wayside Church and Henderson Hodgens as the

representatives of the Settlement Class, and the individuals listed below as the class representative

for each Settlement Sub-Class.

        *Alger County*: John G. Rieckman.

        *Allegan County*: Richard E. Jones.

        *Antrim County*: Ronald Dubois and Carol Dubois.

        *Baraga County*: Diane Kay Speas.

        *Barry County*: Randy Martin.

*Benzie County*: Arlene M. Schultz, as personal representative of the Estate of Abraham Olshansky.

*Berrien County*: Michael J. Cap.

*Calhoun County*: Jeremy T. DeShong and Bonita Hightower.

*Cass County*: Chad A. Pence, as Personal Representative of the Estate of Debra Jean Pence.

*Chippewa County*: Carol V. Ballweg.

*Delta County*: Francine K. Baker.

*Dickinson County:*  Carl Waite.

*Eaton County*: Brandy Lee Martin.

*Emmet County*: Charles G. Parks, Jr.

*Gogebic County*: Crystal A. Raatz Wuethrich.

*Grand Traverse County*: Ronald Hardman and Julie Hardman.

*Hillsdale County*: Diane L. Baker.

*Houghton County*: Dustin Burdett.

*Ingham County*: Danny Butler.

*Ionia County*: Collene C. Northrup.

*Iron County*: Randall Becker.

*Kalamazoo County*: Craig Sloan.

*Kalkaska County*: Max Tracey.

*Kent County*: Timothy Fron.

*Lake County*: Paul Biniak.

*Leelanau County*: William R. Moore.

*Mackinac County*: Phyllis A. Pemberton-Miller, as Personal Representative of the Estate of Barbara Pemberton.

*Manistee County*: Irene Dunham-Thayer.

*Marquette County*: James P. Haglund.

*Mason County*: Barbara Bay.

*Menominee County*: Diane M. Meza.

*Missaukee County*: Ester M. Burruss.

*Montcalm County*: Matthew Atkinson and Jolene Atkinson.

*Muskegon County*: Jaelyn W. Balaskovitz.

*Newaygo County*: Royce D. Covell.

*Oceana County*: Darrell Cole.

*Ontonagon County*: Ruth A. Fors, as Personal Representative of the Estate of Ned J. Fors.

*Osceola County*: Jason Gibson.

*Ottawa County*: Melony Boerman, as Personal Representative of the Estate of Tommy Wayne VanDyke.

*Saint Joseph County*: Rick Mitchem, as Personal Representative of the Estate of Spanward Mitchem.

*Schoolcraft County*: John Deroshia.

*Van Buren County*: Wayside Church and Henderson Hodgens.

*Wexford County*: Lori Carlson.

9.      Pursuant to Rule 23(g), the Court appoints Lead Counsel (Fink Bressack, James Shek, and Lewis, Reed & Allen PC) as Class Counsel, finding that Class Counsel are well-qualified and experienced in class action litigation.

10.     Kroll Settlement Administration is hereby appointed as Claims Administrator to provide Notice to Potential Claimants as described in Paragraph 6.4.1 of the Settlement Agreement

and to administer the process of soliciting, receiving, reviewing, approving or denying claims, and distributing funds.

11.     The proposed form, content, and procedures of notice to the Potential Claimants are approved.  The Notice to be provided to the Potential Claimants clearly, concisely, and in plain language advises them of, among other things, the nature of the Action, the proposed Settlement Agreement, the definition of the Settlement Class and Settlement Sub-Classes, the claims the Settlement Class and Settlement Sub-Classes would release, the consideration the Settlement Class and Settlement Sub-Classes would receive, Class Counsel's intended application for attorneys' fees and expenses, putative Class Members' right to participate individually or through an attorney and object to the Settlement Agreement or any portion of it, putative Class Members' right to opt out and exclude themselves from the Settlement Agreement, and the binding nature of the Settlement Agreement if it is ultimately approved.  The Notice to be provided to Potential Claimants is the best notice practicable under the circumstances, and constitutes due and sufficient notice of the proposed Settlement Agreement and this Order to all persons affected by and/or entitled to participate in the settlement, in full compliance with the notice requirements of Rule 23 and due process.

12.     Within forty-five (45) days of entry of this Order, the Claims Administrator shall begin providing notice of the Settlement Agreement and the Final Approval Hearing to Potential Claimants as described in Paragraph 6.4.1 of the Settlement Agreement, including by (i) mailing the written Notice, along with a Claim Form, to the most recent known address for each Potential Claimant; (ii) publishing the Summary Notice (Exhibit 5 to Plaintiffs' Motion for Preliminary Approval) in major publications; (iii) issuing a press release through PR Newswire's USA 1

Newsline, which will provide summary information regarding the Settlement; and (iv) creating a dedicated website for the Settlement, www.TaxForeclosureSettlement.com.

13.     As set forth in the Settlement Agreement, the Counties shall pay up to $450,000 toward Administration Costs (the costs of the Claims Administrator, the costs associated with the Class Notice, and the costs of the Special Master).

14.     The deadline for Class Members to submit a Claim Form is 135 calendar days after entry of this Order.

15.     No later than 120 calendar days after entry of this Order, any putative Class Member wishing to be excluded from the Settlement Class and Settlement Sub-Classes shall mail an opt-out request to the Claims Administrator conforming in all respects to the terms and provisions of the Notice.  Those who timely and properly do so shall neither participate in the settlement nor release their claims, and they forego (a) all the benefits they might otherwise receive because of the settlement and (b) their standing to participate in the Final Approval Hearing or object to the proposed Settlement Agreement or any portion of it.  Failure to opt out in strict compliance with the time and manner requirements set forth in the Notice shall result in waiver of the right to opt out. All potential Class Members who either do not attempt to or fail to properly and timely opt out shall remain part of the Settlement Class and Settlement Sub-Classes and, to the extent the Settlement Agreement is ultimately approved, shall be bound by the settlement.

16.     The Notice shall designate the Claims Administrator as the entity to whom opt-out requests shall be sent.  The Claims Administrator shall be responsible for the receipt of all responses from putative Class Members and shall preserve all opt-out requests and any and all other written communications from putative Class Members or any other person in response to the Notice until administration of the Settlement is complete or pursuant to further Order of this Court.

All written communications received from putative Class Members and all written responses to inquiries by them relating to the Settlement Agreement and settlement shall be available at all reasonable times for inspection and copying by counsel for Defendants, subject to further Order of the Court if issues of privilege or confidentiality arise.

17.     Any Class Member who does not attempt to or fails to properly and timely opt out of the Settlement Class and Settlement Sub-Classes may, but is not required to, enter an appearance either *pro se* or through counsel of that Class Member's own choosing and expense.  Any Class Member who does not enter a separate appearance shall be represented by Class Counsel.  Class Members who are in favor of the proposed Settlement need not appear at the Final Approval Hearing or take any other action to indicate their approval.

18.     Any Class Member who will challenge or object to the fairness, reasonableness, or adequacy of the Settlement Agreement or any portion of the settlement, including without limitation the amount of Class Counsel's requested fees and expenses must remain part of the Settlement Class and Settlement Sub-Classes and must serve on the Parties a timely and valid statement of Objection that complies with the Objection procedure described in the Notice. Any Objection must be filed with the Clerk of Court and postmarked no later than 120 calendar days after entry of this Order. Class Counsel shall file all such Objections with the Court at least 14 days before the Final Approval Hearing. Any objecting Class Member may appear at the Final Approval Hearing in person, with or without such Class Member's separate counsel.  The scope of any objector's presentation of evidence or argument at the Final Approval Hearing shall be limited to such objector's written objection.  Any Class Member who fails to file and serve an objection in strict compliance with the deadlines and procedures, and containing the information required by the Notice, shall be deemed to have forever waived and forfeited the right to object to

the Settlement Agreement or any part of the settlement or to raise or pursue an objection at the Final Approval Hearing or at any point thereafter, including through appeal or as part of a separate proceeding.

19.    Within ten days of the filing of the Motion for Preliminary Approval, Defendants' counsel shall send notice to the United States Attorney General and the Attorney General for the State of Michigan. Each such notice shall contain all of the information required under 28 U.S.C. § 1715. At least seven (7) days before the Final Approval Hearing, Defendants' counsel shall file a report with the Court confirming that these notices were timely sent.

20.    All other events contemplated under the Settlement Agreement to occur after this Order and before the Settlement Fairness Hearing described in this Order shall occur as proposed in the Motion for Preliminary Approval, to the extent not inconsistent herewith.

21.    The motion for final approval and the motion for attorneys' fees and expenses shall be filed at least 42 calendar days before the Final Approval Hearing; all reply briefs must be filed no later than 7 calendar days before the Final Approval Hearing.

22.    A  Final  Approval  Hearing  shall  be  held  before  the  undersigned  at __9:00 a.m.__ on __October 17 and 18, 2023__, in  the  United  States  District  Court  for  the Western District of Michigan, Kalamazoo Division, 174 Federal Bldg, 410 W. Michigan Ave., Kalamazoo, Michigan 49007, to consider the fairness, reasonableness, and adequacy of the proposed Settlement Agreement, the entry of any final order or judgment in the action, any application for attorneys' fees and costs, and other related matters. The Final Approval Hearing

17

may be postponed, adjourned, conducted virtually or continued by further Order of this Court without further notice to the putative Settlement Class and Settlement Sub-Classes.

23.     All proceedings in the action other than such as may be necessary to carry out the terms and conditions of the Settlement Agreement or the responsibilities related or incidental thereto are stayed and suspended until further notice of this Court.  Pending final determination of the fairness, reasonableness, and adequacy of the proposed Settlement Agreement, no putative Settlement Class Member, other than those who timely and properly have opted out of the Class, may either directly or indirectly prosecute, institute, or commence any individual or class action with respect to the subject matter of this Action.

SO ORDERED.

/s/  Paul L. Maloney
Paul L. Maloney
United States District Judge

# Exhibit 3

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

FREDERICK GRAINGER, JR,
for himself and all those similarly situated,

      Plaintiffs,

      v.

OTTAWA, COUNTY OF, et al.,

      Defendants.

Case No. 19-cv-501
Hon. Paul L. Maloney
Magistrate Phillip J. Green

**\*\* CLASS ACTION \*\***

---

## DECLARATION OF E. POWELL MILLER

1.      I am one of the counsel for Plaintiff Grainger and Proposed Intervenor Behovitz in this matter.

2.      On July 26, 2021, I spoke with mediator Scott Coburn, who is the Sixth Circuit-appointed mediator for *Fox*, District Court No. 1:19-cv-11887 (E.D. Mich), Sixth Circuit Case No. 21-1108, and for the *Wayside v. Van Buren County* case, District Court No. 1:14-CV-1274 (W.D. Mich.), Sixth Circuit Case No. 21-1272, under the auspices of the Sixth Circuit mediation office.

3.      Mr. Coburn could not disclose the substance of these negotiations. But he did confirm that:

      a.  he did not know that there was a competing class action case and contested leadership contest in the Western District,

b.  he did not know that courts throughout the State of Michigan had appointed counsel here for Plaintiff Grainger and Proposed Intervenor Behovitz as class counsel for similar "tax equity" cases, and

c.  he did not know that no court had appointed *Wayside*'s counsel as class counsel in such a case.

4.     Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: July 27, 2021                    /s/ *E. Powell Miller*
                                       E. Powell Miller
                                       **THE MILLER LAW FIRM, P.C.**
                                       950 W. University Dr., Ste. 300
                                       Rochester, MI 48307
                                       Tel: (248) 841-2200

# Exhibit 4

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

FREDERICK GRAINGER, JR,
for himself and all those similarly situated,

        Plaintiffs,

        v.

OTTAWA, COUNTY OF, et al.,

        Defendants.

Case No. 19-cv-501
Hon. Paul L. Maloney
Magistrate Phillip J. Green

**PLAINTIFF AND PROPOSED INTERVENOR'S EMERGENCY MOTION FOR ORDER TO SHOW CAUSE AND OTHER RELIEF**

**\*\* CLASS ACTION \*\***

---

## <u>PLAINTIFF AND PROPOSED INTERVENOR'S EMERGENCY MOTION FOR ORDER TO SHOW CAUSE AND OTHER RELIEF</u>

Plaintiff Grainger and Proposed Intervenor Behovitz respectfully request that the Court enter the order to show cause as requested in the attached brief in support of this motion for the reasons set forth in the brief.

Pursuant to L.R. 7.1(d), counsel for Plaintiff and Proposed Intervenor requested concurrence from Defendants' counsel in the relief requested by "Plaintiff and Proposed Intervenor's Emergency Motion For Expedited Consideration" and related "Emergency Motion for Order to Show Cause" on July 27, 2021. Reasonable efforts were made by Plaintiff and Proposed Intervenor's counsel to contact Defendants' counsel and counsel for Wayside but concurrence was not obtained.

Date: July 27, 2021

RESPECTFULLY SUBMITTED:

*/s/  E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Christopher D. Kaye (P61918)
Gregory A. Mitchell (P68723)
THE MILLER LAW FIRM PC
950 W University Drive, Ste 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
cdk@millerlawpc.com
gam@millerlawpc.com
**Counsel for Plaintiff and
Proposed Intervenor Behovitz**

OUTSIDE LEGAL COUNSEL PLC
Philip L. Ellison (P74117)

1

PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com
**Counsel for Plaintiff and
Proposed Intervenor Behovitz**

Matthew E. Gronda (P73693)
PO Box 70
St. Charles, MI 48655
(989) 249-0350
matthewgronda@gmail.com
**Counsel for Plaintiff and
Proposed Intervenor Behovitz**

Thomas J. Gezon (P24066)
SMIETANKA LAW GROUP
4175 Parkway Place Drive, Suite 104
P.O. Box 336
Grandville, MI 49468
(616) 667-2217
tjg@smietankalaw.com
**Counsel for Plaintiff and
Proposed Intervenor Behovitz**

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

FREDERICK GRAINGER, JR,
for himself and all those similarly situated,

        Plaintiffs,

        v.

OTTAWA, COUNTY OF, et al.,

        Defendants.

Case No. 19-cv-501
Hon. Paul L. Maloney
Magistrate Phillip J. Green

**BRIEF IN SUPPORT OF
PLAINTIFF AND PROPOSED
INTERVENOR'S
EMERGENCY MOTION
FOR ORDER TO SHOW
CAUSE AND OTHER RELIEF**

**\*\* CLASS ACTION \*\***

---

## BRIEF IN SUPPORT OF PLAINTIFF AND PROPOSED INTERVENOR'S EMERGENCY MOTION FOR ORDER TO SHOW CAUSE AND OTHER RELIEF

## STATEMENT OF ISSUES PRESENTED

1. Whether the Plaintiffs in *Wayside Church et al. v. County of Van Buren, et al.*, Case No. 14-cv-01274-PLM (W.D. Mich.) should show cause as requested in Plaintiff Grainger and Proposed Intervenor Behovitz's brief?

   Plaintiff Grainger and Proposed Intervenor Behovitz answer: YES

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………….i

MOST CONTROLLING AUTHORITY……………………………………iii

INTRODUCTION………………………………………………………….1

BACKGROUND………………………………………………………...2

ARGUMENT……………………………………………………………9

    I.     Rule 23 Protects Against Defendants' Efforts to Choose Their Settlement Partner…………………………………………….9

    II.    The Fox Case is the Superior Vehicle for Settlement of the Tax Equity Litigation……………………………………………..12

CONCLUSION AND RELIEF REQUESTED………………………….15

# TABLE OF AUTHORITIES

## Cases

*Arkona, LLC v. Cty. of Cheboygan*, C.A.,
    Case No. 1:19-CV-12372, 2020 WL 4366027 (E.D. Mich. July 30, 2020) ..........8

*Calkins et al. v. Parrish et al.*,
    Case No 1:21-cv-00062-PLM-PJG ..........................................................5

*CIGNA HealthCare of St. Louis, Inc. v. Kaiser*,
    294 F.3d 849 (7th Cir. 2002), *as amended* (July 31, 2002) ...................................5

*Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130*,
    F.2d 890 (7th Cir. 1981) .......................................................................10

*Fox v. Saginaw Cty. et. al.*, C.A.
    Case No. 19-cv-11887 (E.D. Mich.) ........................................... passim

*Fox v. Cty. of Saginaw, et al.*,
    Case No. 1:19-CV-11887, 2020 WL 6118487 (E.D. Mich. Oct. 16, 2020) ..........2

*Hathon v. State of Michigan*, C.A.,
    Case No. 19-00023-MZ (Mich. Ct. of Claims, Feb. 22, 2021)........................3, 8

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010) .................................................11

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    523 F.3d 1091 (9th Cir. 2008) .............................................................11

*Rafaeli v. County of Oakland, et al.*, C.A.,
    Oakland Cir. Ct. Case No. 15-147429-CZ (Aug. 11, 2020) .................................8

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ...............................................................11

*Wayside Church et al. v. County of Van Buren, et al.*,
    Case No. 14-cv-01274-PLM (W.D. Mich.)................................... 3, 4, 5

*Zettel v. Charlevoix Cty.*, C.A.,

Charlevoix Cir. Ct. Case No. 18-0591-26-CZ (Oct. 16, 2020) .................. 3, 8, 14

**Rules and Statutes**

Fed. R. Civ. P. 4(k) .................................................................................15
Fed. R. Civ. P. 23 ........................................................................... passim
Fed. R. Civ. P. 23(g) ....................................................................... passim
28 U.S.C. § 1391(b)(1).............................................................................15

**Treatises**

*A Touch of Class: Reducing the Risk of "Sweetheart Deals"*, 62 Bench & Bar of
   Minn. 20, 21 (2005) ...........................................................................11

*Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343,
   1354 (1995).......................................................................................11

*Dueling Class Actions*, 80 B.U. L. Rev. 461 (2000) ....................................... 11, 16

*Governance and Legitimacy in the Law of Class Actions*, 1999 Sup. Ct. Rev. 337
   (1999)...............................................................................................11

Manual for Complex Litig. (Fourth) § 21.61 at 310................................................10

*The Inadequate Search for "Adequacy" in Class Actions: A Critique of Epstein v.
   Mca, Inc.*, 73 N.Y.U. L. Rev. 765 (1998).............................................................11

## MOST CONTROLLING AUTHORITY

- Manual for Complex Litig. (Fourth) § 21.27 at 278

- *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)

## INTRODUCTION

The plaintiffs in this *Grainger* case and the competing *Wayside Church et al. v. County of Van Buren et al.*, Case No. 14-cv-01274-PLM (W.D. Mich.) ("*Wayside*") case have moved for class certification and the appointment of interim class counsel. There are pending appeals in the Sixth Circuit challenging this Court's and Judge Ludington's opinions rejecting Defendants' sovereign immunity defense.[1] The Sixth Circuit mediation office first attempted a mediation in the Eastern District *Fox* case. After an initial call, the decision was made not to pursue mediation at this time. Shortly thereafter, the mediation office apparently sent its notice to the *Wayside* case, which was not sent to any other of the competing or putative class actions in this Court.[2] Just this last Friday, counsel for Fox learned that there has been a mediation process in the *Wayside* case.

It is entirely appropriate for counsel for Wayside and counsel for Van Buren to settle their individual case. The docket sheet evidences multiple calls and an in person mediation in Cincinnati, on July 13, 2021. Counsel for Grainger contacted

---

[1] *Wayside Church, et al. v. Van Buren Cty.*, Case No. 21-01272 (6th Cir.) and *Fox v. Saginaw Cty., et al.*, Case No. 21-01108 (6th Cir.).

[2] This likely occurred because only *Wayside* was appealed by Defendant Van Buren County. The time to appeal had not yet expired due to Plaintiff's pending motion for reconsideration on the Defendant's motion to dismiss so *Wayside*'s time to appeal had not yet run as to *Grainger*.

the mediator, Mr. Scott Coburn[3], who serves as the mediator in both *Fox* and now *Wayside*. The mediator was appropriately circumspect about the mediation process, but acknowledged that he did not know that there were competing class actions pending before this Court in the Western District and that there were pending motions regarding whom should be appointed as interim lead counsel pursuant to Rule 23. *See* Exhibit A, Miller Declaration. Nor did he know that one or more of counsel for Grainger had been appointed as class counsel in the vast majority of the litigation in Michigan. *Id.* Nor did he know that counsel for Wayside has not been appointed as class counsel by any court in this state with respect to this tax equity litigation. *Id.* This lack of disclosure to counsel to Plaintiff, Proposed Intervenor, and counsel for other putative classes in this Court, sows confusion and concern that the process is being used to settle class claims without court appointment. This Motion and a similar motion are being filed in *Fox* before Judge Ludington to ensure the integrity of Rule 23 and the fair and orderly process of the tax equity litigation.

## BACKGROUND

The Eastern District appointed counsel for Fox, Grainger, and Behovitz as class counsel despite Wayside counsel's attempted opposition. *Fox v. Cty. of Saginaw*, C.A., Case No. 1:19-CV-11887, 2020 WL 6118487 (E.D. Mich. Oct. 16,

---

[3] To be clear, we are casting no aspersions as to Mr. Coburn.

2

2020) (Ludington, J.) *passim* (class certification and appointment of counsel) and *Id.*, at *3 (discussion of Wayside counsel's failure to properly oppose the motion).

Since that time, a class certification and leadership battle has proceeded here in the Western District of Michigan.

In the Western District, the *Fox* class counsel has pursued class certification in this parallel *Grainger v. County of Ottawa, et al.* case, which names most Western District counties as defendants.[4] ECF No. 14, Second Amended Complaint; ECF No. 101, Motion to Certify Class; ECF No. 133, Corrected Putative Class Member Brian Behovitz's Motion to Intervene, File His Supplemental Pleading, and to Certify the Class, Appoint Him as Class Representative, and Appoint Class Counsel. Meanwhile, the *Wayside* plaintiff initially pled a statewide plaintiffs' class against a defendant class consisting of all the state's foreclosing-and-auctioning counties, including those in the Eastern District named in *Fox*, *see Wayside*, 1:14-cv-01274

---

[4] The exceptions are those counties that have "opted out" of the property tax foreclosure-and-auction process in favor of State administration. A class action on behalf of the victims in those counties against the State has been certified in the Michigan Court of Claims, with Messrs. Miller, Ellison, and Gronda appointed as class counsel. *Hathon v. State of Michigan*, C.A., Mich. Ct. of Claims Case No. 19-00023-MZ (recertified, Feb. 22, 2021). *See* ECF No. 133-7, PageID.3496-3505. The other exception is Charlevoix County, where the state court has certified a class against the county and appointed Messrs. Miller, Ellison, and Gronda as class counsel. *Zettel v. Charlevoix Cty.*, C.A., Charlevoix Cir. Ct. Case No. 18-0591-26-CZ (class certified, Oct. 16, 2020). *See* ECF No. 133, PageID.3403.

3

PageID.1444-1478, ECF No. 115, Brief in support of Motion for Class Certification; and 1:14-cv-01274 PageID.939-964, ECF No. 88, Amended Complaint, although this Court has dismissed the Eastern District counties. *See* 1:14-cv-01274 PageID.1961, ECF No. 140, Opinion.[5]

This Court initially denied Grainger's motion for class certification, which sought to appoint Miller and Ellison as lead counsel, on the grounds that the class representative was infirm as to one of the claims based upon the applicable statute of limitations. ECF No. 127. In response, within 48 hours, the *Grainger* plaintiff sought to cure the problem identified by the Court through the intervention of a new plaintiff. ECF No. 129.

Around the same time the *Wayside* plaintiffs, represented by Fink Bressack, James Shek, and Lewis Reed & Allen, P.C., evidently recognized that their class action allegations were infirm. The problem was that the *Wayside* complaint only named Van Buren County as a defendant. Wayside never sued or served all of the counties in the Western District, let alone the Eastern District counties that its initial complaint purported to include within its defendant class. Instead, it relied upon a defense class to attempt to force Van Buren County to represent all of the

---

[5] Plaintiff is filing a counterpart to this Motion in the Eastern District *Fox* case and attaching this Brief. Exhibit E.

4

foreclosing-and-auctioning counties in the State of Michigan. This suspect approach to class certification, which has been described as "rare as a unicorn," *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 853 (7th Cir. 2002), *as amended* (July 31, 2002), was a nonstarter. Van Buren declined to serve as a class representative, *See Wayside*, 1:14-cv-01274 PageID.1555-1556, 1570, 1571, ECF No. 126, Defendant's Response in Opposition, and no other county expressed a willingness to accept Van Buren's service in this role on its behalf.

Thus, plaintiff's counsel in *Wayside* sought to amend their Complaint to follow the *Fox* certification framework approved by the Eastern District, with the offending counties named as actual defendants. But this Court denied this motion, putting *Wayside* in grave jeopardy. *See Wayside*, 1:14-cv-01274 PageID.1958-1963, ECF No. 140, Opinion. The only relief that the Court granted was to dismiss Wayside's implicit claims against the Eastern District counties. *Id.*, 1:14-cv-01274 PageID.1961. As a result of this denial, *Wayside* retains its original posture. It seeks to litigate against a defendant class.

Subsequently other cases appeared here, all supporting Messrs. Miller and Ellison as proposed lead counsel. These included *Calkins et al. v. Parrish et al.*, Case 1:21-cv-00062-PLM-PJG and Eric Lamb, personal representative for the estate of Raymond Lamb, who filed a Motion to Intervene in Grainger through his counsel attorney Michael R. Williams of Bush Seyferth PLLC. As Mr. Lamb said,

> Mr. Lamb has greatest confidence in the proposed lead counsel for this action. Counsel for Mr. Lamb is familiar with the work of E. Powell Miller and his firm, having been involved in the defense of multiple putative class actions brought by that firm. Many regard the Miller Law Firm as one of the premier class-action firms in the nation. It has obtained significant recoveries in many actions in many different courts. Based on counsel's dealings with him, Mr. Miller's exceptional reputation and record of success are unsurprising. He exhibits a deep understanding of his cases, and he advocates for his clients and his classes well. Even in dealing with defendants' attorneys in these suits, Mr. Miller comports himself with professionalism and skill [as shown by his receipt of the] Federal Bar Association, Eastern District of Michigan Chapter, Cook-Friedman Civility Award …. He would be a supremely qualified advocate for Mr. Lamb and others like him.

*Grainger*, Eric Lamb's Motion to Intervene, ECF No. 167, PageID.4108.

This Court never had the opportunity to decide the pending motions for class certification – the renewed *Grainger* motion with the intervening plaintiff, ECF No. 133, and Wayside's motion for class certification under its defendant class theory, *Wayside*, 1:14-cv-01274 PageID.1444-1478, ECF No. 115 – because it stayed the cases, just as the Eastern District stayed *Fox*. The cases were stayed in both courts for the same reason: the Defendants' appeal as of right as to sovereign immunity.

This appeal led to an unfortunately unsuccessful exploration of Sixth Circuit mediation in *Fox*. In the *Fox* case, as is customary, the Sixth Circuit mediation office contacted counsel of record and scheduled an initial call. No formal mediation was scheduled. Recently, Plaintiff and Proposed Intervenor were pleased to learn of an

interest in settling with at least one of the Defendants and a mediation is being scheduled under the auspices of the Charlevoix County Circuit Court. The focus of the *Fox* appeal became the briefing of the sovereign immunity issue. Defendants are also attempting to appeal the Court's ruling on juridical link which is not an appeal of right.

Unbeknownst to counsel for Grainger, Behovitz, and the class in *Fox*, at least one of Defendants' counsel – apparently Mr. Seitz on behalf of Van Buren County[6] – has just weeks later been engaging in mediation with the *Wayside* plaintiffs. The docket there reveals an ongoing mediation process, including at least one in-person session, and an accompanying briefing delay. *See* Docket attached as Exhibit B. This suggests meaningful negotiations.

Counsel discovered the mediation in *Wayside* by examining the docket after noticing that Defendant Van Buren County had not filed a brief on sovereign immunity. Surprisingly, after all agreed there was no point to mediate before the very same mediator in *Fox*, shortly thereafter, mediation proceeded in Wayside.

---

[6] Mr. Seitz represents Van Buren County in the Western District cases and Washtenaw County in the Eastern District. While his cooperation with other defense counsel in the cases' litigation has been evident, given the confidentiality of mediation, Plaintiff and Proposed Intervenor do not know what role, if any, other Defendants have played in the mediation, and they do not mean to levy criticism on non-participating Defendants.

Any effort to settle the class claims would come despite the fact that no court has appointed Wayside as lead plaintiff or its counsel as class counsel for any class. Meanwhile, one or both of Mr. Miller and Mr. Ellison have been appointed as class counsel against nearly every county in Michigan, aside from the defendants in *Grainger* and aside from Wayne County, where there is no opposition to the appointment of Mr. Ellison and Gronda as lead counsel. *See Fox v. Cty. of Saginaw*, C.A., No. 19-CV-11887, 2020 WL 6118487 (E.D. Mich. Oct. 16, 2020); *Hathon v. State of Michigan*, C.A., Case No. 19-00023-MZ (Mich. Ct. of Claims, Feb. 22, 2021); *Arkona, LLC v. Cty. of Cheboygan*, C.A., No. 1:19-CV-12372, 2020 WL 4366027 (E.D. Mich. July 30, 2020); *Zettel v. Charlevoix Cty.*, C.A., Charlevoix Cir. Ct. Case No. 18-0591-26-CZ (class certified, Oct. 16, 2020); and *Rafaeli v. County of Oakland, et al.*, C.A., Oakland Cir. Ct. Case No. 15-147429-CZ (class certified, Aug. 11, 2020).

Moreover, the *Wayside* case has a history of purporting to include the *Fox* Defendants within its defendant class. This poses an immediate risk to the class in the Eastern District counties from *Wayside* because it is possible that, despite the recent exclusion of the Eastern District counties from *Wayside*, plaintiffs' counsel in *Wayside* might be trying to negotiate on behalf of the certified class in that case. If so, they are doing so without the involvement of the class counsel that the Eastern District has appointed. Indeed, the *Fox* class counsel would not even know about the

8

negotiations had it not reviewed the docket in Case No. 21-01272 (6th Cir.) and put the pieces together. Moreover, they are pursuing these negotiations without the direction or authority from any court.

As discussed below, the process counsel for Wayside is engaged in is both inconsistent with the rules and dangerous for the orderly resolution of this controversy.

## ARGUMENT

### I.     Rule 23 Protects Against Defendants' Efforts to Choose Their Settlement Partner.

As discussed above, without the imprimatur of a Rule 23(g) appointment, the *Wayside* plaintiffs' counsel has engaged in negotiations with the Defendant. This is inconsistent with the entire purpose of Rule 23 and Rule 23(g). It reflects the Defendant choosing its settlement partner, rather than the Court exercising judgment about who is best able and most appropriate to act on behalf of the class. Worse, it has taken this upon itself, while no decision was made by this Court. This seriously jeopardizes the orderly resolution of this case in accordance with the rules.

This process is an affront to Fed. R. Civ. P. 23(g). As the Federal Judicial Center explains,

> Unlike other civil litigation, many class action suits do not involve a client who chooses a lawyer, negotiates the terms of the engagement, and monitors the lawyer's performance. Those

tasks, by default, fall to the judge, who creates the class by certifying it and must supervise those who conduct the litigation on behalf of the class. The judge must ensure that the lawyer seeking appointment as class counsel will fairly and adequately represent the interests of the class.

Manual for Complex Litig. (Fourth) § 21.27 at 278. For a defendant to choose the plaintiffs' counsel with whom it negotiates usurps the Court's role and turns Rule 23(g)'s reasoning on its head.

Indeed, there are inherent reasons why the defense would want to choose its settlement partner. This is what the Seventh Circuit warned in *Eggleston*: that "it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified," which "is a bit like permitting a fox, although with pious countenance, to take charge of the chicken house." *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).

The present situation risks a "reverse auction," which is an "abuse" against which courts should be "wary." Manual for Complex Litig. (Fourth) § 21.61 at 310. "A reverse auction is said to occur when 'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.'" *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091,

10

1099 (9th Cir. 2008) (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)).

Under these circumstances, "[e]ven in the absence of bad faith, suspect settlements result in large measure because of the defendants' ability to shop for favorable settlement terms…." John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L. Rev. 1343, 1354 (1995). "Defendants, well aware of these incentives, can thus go plaintiff and lawyer shopping..." Marcel Kahan & Linda Silberman, *The Inadequate Search for "Adequacy" in Class Actions: A Critique of Epstein v. Mca, Inc.*, 73 N.Y.U. L. Rev. 765, 775 (1998). *See also* Rhonda Wasserman, *Dueling Class Actions*, 80 B.U. L. Rev. 461, 473–74 (2000) (discussing dynamic); *Governance and Legitimacy in the Law of Class Actions*, 1999 Sup. Ct. Rev. 337, 388 (1999) (same).

Federal jurisprudence is intended to protect against this. A "defendant's ability to select its negotiating partner is eliminated when class actions are removed to federal court and related cases are consolidated before the same judge, who chooses lead counsel and gives him or her exclusive authority to negotiate a settlement." *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*, 733 F. Supp. 2d 997, 1006 (E.D. Wis. 2010) (citing Kent M. Williams, *A Touch of Class: Reducing the Risk of "Sweetheart Deals"*, 62 Bench & Bar of Minn. 20, 21 (2005)).

Even if Wayside's counsel were able to negotiate a favorable settlement, they should not be permitted to effectively appoint themselves as Rule 23(g) counsel. For them to do so would effectively grant themselves the relief requested in their Rule 23(g) motion. Again: they cannot usurp the authority of either this Court or the Eastern District Court. If they are able to do so, even if it does not constitute a reverse auction here, it will be precedent that invites reverse auctions in the future.

## II.   The *Fox* Case is the Superior Vehicle for Settlement of the Tax Equity Litigation.

The *Wayside* plaintiffs are in a compromised bargaining position and thus an obvious candidate for a disruptive "reverse auction" settlement effort. As discussed above, *Wayside* relies on the risky defendant class mechanism, and this Court has denied its effort to remedy this deficiency. Moreover, as to the Eastern District counties, *Wayside* is an especially appealing reverse auction target: Defendants have an inherent incentive to choose a settlement partner that lacks the rudimentary leverage of having sued them.

Conversely, the Eastern District in *Fox* has certified the class, and appointed class counsel, with good reason. These so-called "tax equity" cases require enormous resources, especially given Defendants' tooth-and-nail opposition to plaintiffs' claims throughout the tax equity litigation. Counsel for Grainger, Behovitz, and the *Fox* class has met defendants blow-for-blow. Messrs. Ellison and

12

Gronda have litigated these cases for years against daunting odds and substantial defense resources; they are singularly responsible for the progress that the equity victims have enjoyed. *See* ECF No. 133, PageID.3396, 3401-3402 (motion for class certification). Meanwhile, the Miller Law Firm is Michigan's leading class action law firm. ECF No. 133, PageID.3386, 3396. It alone has five lawyers actively working on this case on a regular basis, along with Mr. Ellison and Mr. Gronda, for a total of seven lawyers, all with either significant class action or tax foreclosure experience. Indeed, the very fact that at least one Defendant would appear to prefer to negotiate with Wayside's counsel illustrates the Eastern District's wisdom in appointing Fox's counsel.

As just a recent example of the *Fox* class counsel's diligence, since the defense showed no interest in mediating the *Fox* case in the Sixth Circuit, class counsel has been working diligently to identify and stop interlopers who appear to be attempting to destroy the class with systemic optouts. *See Fox*: emergency motion to show cause (Exhibit C); order granting Plaintiff's emergency motion, directing non-party to show cause (Exhibit D). Wayside's counsel has not joined these efforts and has apparently turned a blind eye to a clear and present danger to the class.

Even if Wayside is not actively trying to negotiate on behalf of the *Fox* defendants, its efforts pose a risk to the resolution of this case, because any class

settlement anywhere would immediately become a potential template for resolution statewide.

To be clear, counsel for Grainger, Behovitz, and the *Fox* class favors a comprehensive resolution. But it can only be accomplished through the rules for class action practice and with the accompanying judicial oversight.

For example, counsel for Grainger, Behovitz, and the *Fox* class is also Court-appointed class counsel in *Zettel v. Charlevoix Cty.* in the Charlevoix County Circuit Court, where mediation is required within the next 60 days under a pending court order. Class counsel is cautiously optimistic that this might result in a template for resolution of at least the Western District cases. That would be appropriate: Court-appointed counsel negotiating a resolution with judicial oversight. It would be in stark contrast to Wayside's efforts, where counsel that is not appointed class counsel anywhere is circumventing multiple courts and the attorneys that those courts have appointed as class counsel.

A judicially supervised class resolution would also avoid the risks posed by Wayside's engagement in a dangerous reverse auction. If Wayside purports to bind victims statewide, then multiple courts will face extensive motion practice. Even if Wayside only settles with some counties, victims throughout the rest of the state will need to contend with a template providing for an inadequate resolution. Inconsistent settlements risk complicated approval litigation – in which, again, Defendants might

be striving to choose their own settlement partners. Coordination between courts and across cases is far preferable to any such morass and would facilitate the effective conclusion of a fair, efficient, and approvable resolution.

## CONCLUSION AND RELIEF REQUESTED

Plaintiff and Proposed Intervenor request that the Court issue a Show Cause order as to why counsel for Wayside engaged in a mediation while competing motions under Rule 23(g) remain outstanding.

Plaintiff and Proposed Intervenor request the Court consider the following suggestions for relief:

1.      Lift the stay for the limited purpose of deciding the pending Rule 23 (g) motions for interim leadership.

2.      Discuss with Judge Ludington a plan of coordination. The *Fox* case is advanced with pending motions and resources being devoted to preventing non-attorney third parties from predatory practices of improperly opting out class members. One possibility is to amend *Fox* to include the counties at issue here as jurisdiction is proper under Rule 4(k) and venue is proper under 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."). Of course, it is the prerogative of both this Court and Judge Ludington to decide the best way forward. To be sure, one set of counsel would prevent the danger

15

of a reverse auction. *See* Wasserman, Dueling Class Actions, 80 B.U. L. Rev. at 508

("By eliminating the possibility that more than one lawyer, or group of lawyers in

consolidated actions, could represent the class in court, consolidation would also

eliminate the possibility that the defendant could conduct a 'reverse auction.'").

     3.     Any relief this Court and the Honorable Judge Thomas L. Ludington

deem appropriate.

                                 RESPECTFULLY SUBMITTED:

Date: July 27, 2021

                          */s/  E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Christopher D. Kaye (P61918)
Gregory A. Mitchell (P68723)
THE MILLER LAW FIRM PC
950 W University Drive, Ste 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
cdk@millerlawpc.com
gam@millerlawpc.com
**Counsel for Plaintiff and
Proposed Intervenor Behovitz**

OUTSIDE LEGAL COUNSEL PLC
Philip L. Ellison (P74117)
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com
**Counsel for Plaintiff and
Proposed Intervenor Behovitz**

Matthew E. Gronda (P73693)

16

PO Box 70
St. Charles, MI 48655
(989) 249-0350
matthewgronda@gmail.com
**Counsel for Plaintiff and**
**Proposed Intervenor Behovitz**

Thomas J. Gezon (P24066)
SMIETANKA LAW GROUP
4175 Parkway Place Drive, Suite 104
P.O. Box 336
Grandville, MI 49468
(616) 667-2217
tjg@smietankalaw.com
**Counsel for Plaintiff and**
**Proposed Intervenor Behovitz**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2021 I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings, which includes counsel for the Wayside plaintiffs.

*/s/ E. Powell Miller*

E. Powell Miller

**THE MILLER LAW FIRM, P.C.**

950 W. University Dr., Ste. 300

Rochester, MI 48307

Tel: (248) 841-2200

epm@millerlawpc.com
